Adremy DENNIS, Plaintiff,

v.

Betty MITCHELL, Warden, Defendant.

No. 1:98–CV–1155.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 1, 1999.

Nathan A. Ray, Burdon & Merlitti, Akron, OH, John F. McCaffrey, McLaughlin & McCaffrey, Cleveland, OH, for Adremy Dennis.

Betty Mitchell, Mansfield, OH, Jonathan R. Fulkerson, Office of the Attorney General, Capital Crimes Section, Columbus, OH, Charles L. Wille, Office of the Attorney General, Cleveland, OH, for Betty Mitchell.

## AMENDED OPINION AND ORDER [1]

GWIN, District Judge.

On June 30, 1998, Petitioner–Defendant Adremy Dennis filed a petition for a writ of habeas corpus in this death penalty case [Doc 9]. In seeking release, Petitioner Dennis says constitutional error attended his conviction and resulting death penalty. Dennis further argues that the standard of review of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") does not apply to his petition.

In response, Respondent Betty Mitchell [2] first argues that Dennis has procedur-

---

1. This order corrects a citation error on page 883 of this Court's Opinion and Order [Doc 68]. In that opinion, the Court incorrectly attributed a holding to the United States Supreme Court. This Opinion corrects that error and properly attributes the holding to the United States Court of Appeals for the Fifth Circuit. *See Amos v. Scott,* 61 F.3d 333, 342 (5th Cir.1995), *cert. denied,* 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995).

2. Mitchell is the Warden of Ohio's Mansfield Correctional Institution.

ally defaulted many of his constitutional claims. As for the remaining claims, Respondent Mitchell contends that Dennis makes no showing of a constitutional violation, especially under the deferential review required under the AEDPA.

In deciding Dennis's petition for a writ of habeas corpus, the Court first describes the factual background of Dennis's crime.[3] Second, the Court describes Dennis's direct appeal and his later efforts at state postconviction relief. Third, the Court decides whether the AEDPA applies to this petition. After finding the AEDPA's provisions applicable to this petition, the Court next discusses whether Petitioner Dennis exhausted his state court remedies and whether Dennis defaulted certain claims under a state procedural rule.

Having established this background, the Court then decides Dennis's request for an evidentiary hearing and discovery. After deciding that Dennis is not entitled to an evidentiary hearing or discovery, the Court discusses the merits of Dennis's individual claims. Upon reviewing the claims, the Court finds Dennis shows no right to a writ of habeas corpus. The Court therefore denies Dennis's application for a writ of habeas corpus.

## I. Factual and Procedural Background

### A. Factual Background

The State of Ohio convicted Petitioner Dennis of the murder of Kurt O. Kyle. The State alleged, and the jury found, that on June 5, 1994, Dennis killed Kurt Kyle by shooting him in the head with a sawed-off shotgun at point blank range. The jury further found that Dennis killed Kyle during a robbery attempt and as part a course of conduct involving the killing or attempt to kill two or more persons—both death specifications under Ohio law. The jury recommended the death penalty, and the court imposed a death sentence on Dennis.

On the night of Kyle's murder, Dennis and a friend, Leroy "Lavar" Anderson, went out together. At the time they went out, they spoke of "robbing somebody." They armed themselves: Dennis with a sawed-off shotgun and Anderson with a .25 caliber handgun. As the pair proceeded to a bar, they smoked marijuana.

At the bar, Dennis and Anderson had a few drinks. After leaving the bar, they encountered Pizer in an alley near West Market Street and South Highland Avenue, in Akron, Ohio. Pizer testified that Dennis was wearing a long black leather coat. After approaching Pizer, Dennis told Pizer, "Give me your money . . . . . Don't try and run, don't try and run. You are going to die tonight, you are going to die." Pizer moved backwards, slid and rolled down a hill. As he ran, he heard a gunshot "just left of me. There was a trash can or something got hit. . . ." He then ran away unharmed.

As Dennis and Anderson were confronting Pizer, Kurt Kyle hosted a cookout at his home. Later, Kyle escorted a departing guest, Martin Eberhart, to Eberhart's car. At the car, Kyle continued his conversation with his friend. While Eberhart was seated in his car talking with Kyle, they heard a loud noise. Kyle told Eberhart the sound was that of a gunshot.

Shortly after the gun shot, Dennis and Anderson approached Kyle and Eberhart in Kyle's driveway. At this location, they were out of the view of Kyle's other guests. As he approached with Dennis, Anderson demanded money while pointing a gun at Eberhart's neck. Eberhart slowly reached under the car seat for his wallet and handed Anderson $15.

At the same time, Dennis demanded money from Kyle. As Dennis threatened him, Kyle searched his pockets and told Dennis that he had no money with him. Dennis then took the sawed-off shotgun and shot Kyle in the head at point-blank range. The shotgun blast severed both of victim Kyle's carotid arteries. Kyle died

---

**3.** In stating the facts of Dennis's crime, the Court relies upon the Ohio Supreme Court's description, provided in *State v. Dennis*, 79 Ohio St.3d 421, 421–24, 683 N.E.2d 1096, 1099–1101 (1997), *cert. denied*, — U.S. —, 118 S.Ct. 1078, 140 L.Ed.2d 136 (1998).

instantly of hypovolemic shock. Dennis and Anderson then ran away together "sprinting very fast."

About a minute after the blast to Kyle's head, Anita Foraker, a neighbor, walked her dog on Bloomfield Road. At that time, she saw two young black males near her on the other side of Bloomfield Road. She heard one say to the other, "Did you get it?"

Within a few days of the murder, an anonymous caller told the Akron Police that someone at 371 Grand Avenue had information about Kyle's killing. Akron detectives went to the address, where they met Shirley Morgan. Ms. Morgan gave the detectives permission to enter her house, to look around the house, and to speak to her son, seventeen-year-old Lavar Anderson.

In the basement of Morgan's house, the detectives noticed clothing similar to the clothing identified as having been worn by the assailants who robbed Eberhart and Kyle. After viewing the clothing, the detectives took Anderson into custody. While in custody, Anderson gave detectives information about the location of the murder weapon. With this information, the detectives obtained a search warrant. Executing this search warrant, the police seized several items from Morgan's basement, including the two coats, a .25 caliber pearl handle handgun, a 20 gauge sawed-off shotgun, and seven shotgun shells.

Soon after, police arrested Dennis. After his arrest, Dennis waived his *Miranda* rights. In interviews following this waiver, Dennis told several versions of where he had been on June 4 and 5, 1994. An Akron detective then confronted Dennis with the sawed-off shotgun obtained from Anderson's residence. Dennis identified the shotgun as his own. After further questioning, Dennis admitted that he and Anderson had planned to commit robber-

ies. He then admitted robbing Pizer, Eberhart, and Kyle. Dennis confessed to aiming the sawed-off shotgun at Kyle, but claimed the gun went off accidentally.

Dennis agreed to allow detectives to tape his statement. In this taped statement, Dennis said that he and Anderson had smoked marijuana and then drank at a bar before the robberies and murder. Dennis admitted firing the sawed-off shotgun in the incidents with Pizer and Kyle, but claimed the shots were accidental.[4]

In examining the scene, police found yellow shotgun shell casings near where Pizer reported being accosted, and also in front of Kyle's home. A forensic scientist from the Ohio Bureau of Criminal Identification and Investigation gave the opinion that the two casings were fired from the sawed-off shotgun that Dennis acknowledged as his own.

The grand jury indicted Dennis on one count of aggravated murder, one count of attempted murder, three counts of aggravated robbery, and one count of possession of dangerous ordnance. All counts carried a firearms specification, and the dangerous ordnance charge also carried a physical-harm specification. The aggravated murder count also carried two death specifications: (1) murder during an aggravated robbery, where Dennis was the principal offender (OH Rev. Code § 2929.04[A][7]); and (2) murder committed as a course of conduct involving the killing or attempt to kill two or more persons (OH Rev.Code § 2929.04[A][5]).

### B. Procedural Background

On December 12, 1994, Dennis's trial began. After trial, the jury found him guilty as charged. The trial court then conducted a mitigation hearing where Dennis presented evidence. In mitigation, Dennis gave unsworn testimony claiming he did not intend to shoot Kyle, and that

---

4. Dennis claimed he "could barely focus" when they came upon Kyle and Eberhart. After shooting Kyle, Dennis claimed he almost fell down and that Anderson had to help him flee the scene. This testimony was contra- dicted by Eberhart who testified that Dennis and Anderson "ran away together sprinting very fast." The testimony was also contra- dicted by neighbor Foraker, who testified that Dennis and Anderson ran away.

he "was drunk and nervous and scared and the gun went off and I ran." Dennis expressed remorse for what he had done and stated that he was sorry for what he had done to the Kyle family.

On December 20, 1994, the jury returned a unanimous verdict and recommended the death penalty. On December 29, 1994, the Summit County Common Pleas Court adopted the jury's recommendation and sentenced Dennis to death.

Dennis appealed to the Summit County Court of Appeals. On May 8, 1996, the court of appeals upheld Dennis' conviction and death sentence. *See State v. Dennis,* No. 17156, 1996 WL 233501 (Summit County Ct.App. May 8, 1996) (unreported).

On June 14, 1996, Dennis filed a notice of appeal to the Ohio Supreme Court. On September 24, 1997, the court affirmed the conviction and sentence. *See State v. Dennis,* 79 Ohio St.3d 421, 683 N.E.2d 1096 (1997).

Dennis then filed a petition for a writ of certiorari to the Supreme Court of the United States. On February 23, 1998, the Supreme Court of the United States denied Dennis's petition for certiorari. *See Dennis v. Ohio,* 522 U.S. 1128, 118 S.Ct. 1078, 140 L.Ed.2d 136 (1998).

After all of Dennis's avenues for relief on direct appeal ended, Dennis filed a petition for postconviction relief. On September 20, 1996, Dennis filed this petition under Ohio Revised Code § 2953.21 in the Summit County Common Pleas Court. On February 11, 1997, the common pleas court denied all of Dennis's claims for relief.

Dennis next appealed the denial of his postconviction petition to the Summit County Court of Appeals. On November 19, 1997, the court of appeals affirmed the trial court's dismissal of Dennis's postconviction petition. *See State v. Dennis,* No. 18410, 1997 WL 760680 (Summit County Ct.App. November 19, 1997) (unreported).

On January 5, 1998, Dennis filed a Memorandum in Support of Jurisdiction in the Ohio Supreme Court. On March 11, 1998,

the court declined to hear the case and dismissed Dennis's postconviction appeal. *See State v. Dennis,* 81 Ohio St.3d 1468, 690 N.E.2d 1287 (1998).

On June 30, 1998, Dennis filed a petition for a writ of habeas corpus with this Court. The Court now considers Dennis's petition.

## II. AEDPA

### A. Applicability of the AEDPA

Petitioner Dennis brings this action for habeas relief under 28 U.S.C. § 2254(d)(1). On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214, into law. The AEDPA made significant changes in habeas law, chief among them for purposes of this opinion is a heightened respect for state court factual and legal determinations.[5]

Petitioner Dennis argues that the AEDPA does not apply to his case because his conviction occurred before the enactment of the AEDPA. Respondent Mitchell asserts that AEDPA applies to this case because Dennis filed his petition after the effective date of the act.

█ Dennis filed this petition on June 30, 1998, two years after the AEDPA was signed into law. Despite Dennis' contention, the Court finds that the AEDPA applies to this case and all habeas cases filed after April 24, 1996.

Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have found the AEDPA applicable to petitions filed after the act became law. In *Breard v. Greene,* the Supreme Court dismissed a petition for a writ of habeas corpus filed after the enactment of the AEDPA. 523 U.S. 371, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998). In so doing, the Court found the petitioner's relief subject to the new law, even though his conviction and the violation he

**5.** *See infra,* Part II.B.

complained of in his petitioner occurred before the AEDPA's enactment.

Likewise, in *Harpster v. Ohio*, the Sixth Circuit recognized the applicability of the AEDPA to subsequently-filed petitions:

> This court reviews the District Court's grant of habeas corpus relief de novo. Our review of the state trial court's decisions, however, is governed by the standards established by the Antiterrorism and Effective Death Penalty Act of 1996.... Because petitioner filed his application for a writ of habeas corpus on July 26, 1996, after the effective date of AEDPA, the revised § 2254(d) governs our inquiry into whether habeas corpus relief was appropriate in this case.

128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).[6]

To like effect, the Sixth Circuit decided *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998). There, a petition filed after the enactment of the AEDPA challenged the constitutionality of a conviction predating the act. On review, the court found that the petition was governed by the deferential standards of the recently-enacted law. *Id.* at 433.[7]

Under clear authority, the AEDPA applies to Petitioner Dennis's petition. The Court now examines the standard of review provided by the AEDPA.

### B. Deferential Standard of Review under the AEDPA

With the AEDPA, Congress limited federal courts' review of state court determinations under 28 U.S.C. § 2254. Specifically, § 2254(d) now prohibits a federal district court from granting a writ of habeas corpus with respect to a claim that was adjudicated on the merits in state court proceedings. The law provides two exceptions to this prohibition:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the United States Court of Appeals for the First Circuit has observed, the "AEDPA is hardly a model of clarity ... and its standard of review provision is far from self-explicating." *O'Brien v. Dubois*, 145 F.3d 16, 20 (1st Cir.1998); *see also Nevers v. Killinger*, 169 F.3d 352, 357–58 (6th Cir.1999). This ambiguity has led to a split among the circuits with respect to the proper interpretation of § 2254(d). *See Nevers*, 169 F.3d at 358. The circuit split reflects a divergence in view as to how much deference the AEDPA requires federal courts to give state court judgments on habeas review.

On one end of the continuum, the Fifth Circuit has adopted a construction of § 2254(d) that provides considerable defer-

---

**6.** Petitioner Dennis misrepresents *Harpster v. Ohio*, 128 F.3d 322 (6th Cir.1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998) as saying that the Sixth Circuit has not decided whether the AEDPA applies to petitions filed after its enactment but involving convictions before its enactment. Rather, the *Harpster* court acknowledged that the Sixth Circuit had not clearly developed an approach to decide whether a petition involves a question of law, a question of fact, or a mixed question of law and fact. *See id.* at 326.

**7.** Petitioner Dennis seeks to distinguish *Franklin* by arguing that it involved whether the petitioner was competent to waive habeas corpus relief. However, the important consideration is what standard of review was employed. In *Franklin*, the Sixth Circuit clearly applied the AEDPA standard of deference to state court factual determinations though the case involved a conviction predating the AEDPA.

ence to state court judgments. *See Drinkard v. Johnson,* 97 F.3d 751, 767 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), *overruled on other grounds by Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under the Fifth Circuit's approach, the level of deference depends on whether the challenge to the state court's judgment depends on a question of law, fact, or a mixed question of law and fact.

If the challenge involves a question of pure law, a federal habeas court must determine if the state court's judgment is "contrary to" Supreme Court precedent. *See id.* at 767. However, if the challenge involves a mixed question of law and fact, a federal habeas court must give the state court judgment deference, determining only if the judgment involved an "unreasonable application" of Supreme Court precedent. *See id.* at 767–68. Similarly, if the challenge centers on a state court's factual determination, a federal habeas court reviews only the reasonableness of that determination. *See id.* at 767.

In contrast, the First Circuit has construed § 2254(d) as less deferential to state court judgments. *See O'Brien v. Dubois,* 145 F.3d 16 (1st Cir.1998). Specifically, the First Circuit interprets § 2254(d)(1) to drastically limit the number of state court decisions a federal habeas court will review under the deferential "reasonable application" standard.

A federal habeas court following the First Circuit's approach must first determine whether a Supreme Court rule, by virtue of its factual similarity or by its formulation of a framework applicable to variant factual situations, "can be fairly said to require a particular result in a particular case." *Id.* at 25. If a state court judgment reaches a result "contrary to" that prescribed by the Supreme Court rule, a federal court may grant a writ of habeas corpus.

Thus, under the First Circuit's approach, the "contrary to" standard of review applies to more than just questions of law. State court decisions involving the application of the Supreme Court's "framework" for analyzing a particular set of facts also trigger the less deferential "contrary to" standard of review under § 2254(d)(1). Only in the absence of an applicable Supreme Court rule will a federal habeas court review a state court judgment for its reasonableness in applying related Supreme Court precedent. *See id.*

Petitioner Dennis advocates construction of § 2254(d)(1) that, like the First Circuit's approach, gives minimal deference to state court judgments. Dennis believes that the "contrary to" language in § 2254(d)(1) encompasses plenary federal court review of a state court judgment that can "sensibly" be called contrary to Supreme Court precedent, whether involving a question of law or mixed question of law and fact. A federal habeas court, according to Dennis, applies the "unreasonable application" standard of review only to state court judgments regarding a question the Supreme Court has never addressed. In such an instance, Dennis argues, the federal habeas court must determine whether the state court applied "the Supreme Court's peripherally pertinent precedents in an 'unreasonable manner.'"

In support of his interpretation of the AEDPA, Dennis asserts that a more deferential construction of the AEDPA would violate the separation of powers principle embodied in the United States Constitution. The Constitution, Dennis notes, vests Article III courts with the power to interpret, declare, and apply federal law. Requiring federal courts to defer to state court decisions interpreting and applying federal law would, according Dennis, render the "Judicial Power" invested in Article III courts practically inoperative.

To date, neither the United States Supreme Court nor the Sixth Circuit has adopted a general interpretation of the AEDPA's standard of review provision. However, the Supreme Court has granted certiorari in *Williams v. Taylor,* a Fourth

Circuit case interpreting § 2254(d). 163 F.3d 860 (4th Cir.1998), *cert. granted* —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516. Thus, the Supreme Court will likely provide guidance as to the proper construction of this provision in the near future.

Yet, at present, the Court finds an absence of binding authority with respect to the proper interpretation of the AEDPA's standard of review provision. As a result, the Court must independently analyze § 2254(d) to determine the standard of review applicable to Dennis's claims.

However, Petitioner Dennis objects to such an independent analysis. Rather, Dennis asks the Court to hold its decision on his petition in abeyance until the Supreme Court renders its decision in *Williams.* In its discretion, the Court refuses Dennis's request.

The Court does so for two reasons. First, the Court finds that a textual analysis of the AEDPA strongly supports a deferential interpretation of the § 2254(d), such as that fashioned by the Fifth Circuit.[8] Second, the Court finds Dennis's constitutional objection to a deferential construction of the AEDPA lacks merit.

### 1. Textual Analysis of the AEDPA

■ An exercise in statutory interpretation must begin with an examination of the relevant statutory text. *See Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir.1995) ("In all cases of statutory construction, the starting point is the language employed by Congress."). In this case, § 2254(d) sets forth three grounds upon which a federal court may set aside a state court judgment on habeas review.

Section § 2254(d)(1) contains the first two grounds, providing that a federal court may grant a writ of habeas corpus when a state court judgment "resulted in a decision that was contrary to, or an unreason-

able application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Section § 2254(d)(2) contains the third ground for granting a writ of habeas corpus, available when a state court judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Like the Fifth Circuit in *Drinkard,* the Court construes the above provisions as encompassing "the fundamental proposition that judicial decisions rest on the answers to one or more of three types of questions: questions of law, questions of fact, and mixed questions of law and fact. . . ." *Drinkard,* 97 F.3d at 767.

By its plain terms, § 2254(d)(2) concerns a state court's factual determinations. *See id.* Thus, § 2254(d)(1) provides the standard of review for state court decisions regarding both questions of law and mixed questions of law and fact.

A mixed question of law and fact essentially involves the application of law to facts. Thus, as the Fifth Circuit found in *Drinkard,* "[t]he second clause of subsection (d)(1), by its own language, refers to mixed questions of law and fact because it speaks of 'an unreasonable application of . . . clearly established law. . . .' " *Id.*

■ The "contrary to" language of § 2254(d)(1), therefore, refers solely to questions of law. Under this clause, the reasonableness of a state court's legal conclusions is of no moment. Instead, a federal habeas court has license to independently review state court legal conclusions for error. *See Lindh,* 96 F.3d at 869.

Petitioner Dennis's relegation of the "unreasonable application" language of § 2254(d)(1) to situations where the Supreme Court has offered no relevant pre-

---

8. Like the Fifth Circuit, the Fourth, Seventh, and Eleventh Circuits have interpreted the AEDPA as requiring considerable deference to state court judgments. *See Green v. French,* 143 F.3d 865 (4th Cir.1998); *Lindh v.*

*Murphy,* 96 F.3d 856, 870 (7th Cir.1996) (en banc), *overruled on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Neelley v. Nagle,* 138 F.3d 917 (11th Cir. 1998).

cedent lacks textual support. As one commentator has observed: "The error of this construction is patent on the face of the statute. Application is not extrapolation. If there is no clearly established law governing the situation, then nothing the state court did could possibly be an unreasonable application of nonexistent law." Kent S. Scheidegger, *Habeas Corpus, Relitigation, and the Legislative Power*, 98 Co-LUM.L.REV. 888, 949 (1998).

■ A sensible textual analysis of § 2254(d), therefore, indicates that Congress fashioned a statute that provides considerable deference to state court judgments. A federal habeas court reviews *de novo* only a state court's legal conclusions. A state court's application of federal law to facts, in contrast, warrants deference unless it involves an unreasonable application of Supreme Court precedent.[9]

### 2. Constitutional Objections

Dennis claims that a deferential interpretation of the AEDPA does violence to the constitutional authority of the federal courts. The Court finds this claim unavailing for two reasons. First, even under a deferential construction of the AEDPA, federal courts bear the ultimate responsibility for declaring federal law. Second, construing the AEDPA to require deference to state courts' application of federal law is consistent with our constitutional system of government.

9. Relevant legislative history supports this interpretation of § 2254(d)(1). Of particular significance, Senator Biden, described as Congress's "foremost defender" of *de novo* habeas review, acknowledged that the AEDPA would mandate deference to state court determinations of mixed questions. Scheidegger, *supra*, at 951–52. During Senate debate on the bill that would become the AEDPA, Senator Biden noted that under the bill, "a claim can be granted only if the State court's application of Federal law to the facts before it was unreasonable, not merely wrong but unreasonable." 141 Cong.Rec. 274840 (June 7, 1995); *see also* Scheidegger, *supra*, at 951–52 (discussing AEDPA legislative history).

### a. Declaring Federal Law

■ The Court's construction of the AEDPA preserves the federal judiciary's constitutional role in declaring federal law. The "contrary to" language in 2254(d)(1) allows a federal court to review *de novo* a state court's legal determinations. Thus, a federal habeas court is free to correct a state court's error in the choice or interpretation of applicable federal law.[10] The AEDPA limits a federal court's review to one based on reasonableness only when the state court's decision involves the application of federal law. As the Seventh Circuit has noted:

> How much leeway does the 'unreasonable application' language create? None on questions of interpretation. It does not authorize or permit state courts to deviate from the Constitution. Federal courts acting within their jurisdiction are always entitled to interpret the law independently.

*Lindh*, 96 F.3d at 870.

■ Article III courts, and ultimately the United States Supreme Court, determine "what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The AEDPA, as interpreted by this Court, does nothing to endanger their role in this regard. *See Barker v. Yukins*, 993 F.Supp. 592, 599 (E.D.Mich.1998).

### b. Federal System of Government

Contrary to Dennis's contention, the Court's deferential construction of the

10. The Seventh Circuit explained the role of the federal courts in this regard:

> [the 'contrary to language' of § 2254(d)(1)] preserves rather than undermines federal courts' independent interpretive power. Federal courts are free to express an independent opinion on all legal issues in the case..... Section 2254(d) requires us to give a respectful reading, and to listen carefully to [the state court's] conclusions, but when the state court addresses a legal question, it is the law 'as determined by the Supreme Court of the United States' that prevails.

*Lindh*, 96 F.3d at 868–69.

AEDPA is fully consistent with our constitutional system of government.

With our Constitution, Congress established neither a strictly "national" government, in which the states would be consolidated and lose their sovereign character, nor a strictly "federal" one, in which the states would retain their full sovereignty. Instead, the new government had characteristics of both types. *See* THE FEDERALIST No. 39, Madison; Scheidegger, *supra*, at 898.

America's judicial structure reflects this dual, and often parallel, structure. That structure was formed by the Judiciary Act of 1789, the Constitution, and the preexisting state judicial systems. Although there have been changes in the details, the broad outlines of that structure remain to this day. *See* Scheidegger, *supra*, at 898. Under this structure, both state and federal Article III courts have power to decide both state and federal issues of fact and law. Alone, the Supreme Court has appellate jurisdiction over both state and feder-

al courts. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 1064 n. 11, 137 L.Ed.2d 170 (1997).[11]

Consistent with this parallel judicial structure, both the federal and state court systems are expected to apply the same law. The Constitution commands state judges, through the Supremacy Clause, to apply federal law despite any conflict with state law.[12] At the same time, Congress directs federal judges to apply state law in the absence of conflicting federal law.[13] The Supreme Court alone is the final arbiter of the inevitable conflicts that arise when these two court systems construe the same law.

■ In enacting the AEDPA, Congress comported with the structure of our federal system. Central to our system is the right and obligation of state courts to apply the U.S. Constitution and laws to their decisions. Equally central to our system is the general rule that state court determinations are not subject to appellate re-

**11.** In *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* the Supreme Court commented on the our dual-natured judicial system:

> While all the reasons that led Congress adopt this restriction on federal courts are not wholly clear, it is certainly likely that one reason stemmed from the essentially federal nature of our national government. When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government. But those powers that were not surrendered were retained by the States and unless a State was restrained by 'the supreme Law of the Land' as expressed in the Constitution, laws, or treaties of the United States, it was free to exercise those retained powers as it saw fit. One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies. Many of the Framers of the Constitution felt that separate federal courts were unnecessary and that the state courts could be entrusted to protect both state and federal rights. Others felt that a complete system of federal courts to take care of federal legal problems should be provided for in the Constitution itself. This dispute resulted in compromise. One 'supreme Court' was created by the Constitution, and Congress was given the power to

> create other federal courts. In the first Congress this power was exercised and a system of federal trial and appellate courts with limited jurisdiction was created by the Judiciary Act of 1789, 1 Stat. 73.

> While the lower federal courts were given certain powers in the 1789 Act, they were not given any power to review directly cases from state courts, and they have not been given such powers since that time. Only the Supreme Court was authorized to review on direct appeal the decisions of state courts. Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in this Court of the federal questions raised in either system. Understandably this dual court system was bound to lead to conflicts and frictions.

398 U.S. 281, 285–86, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) (footnotes omitted).

**12.** *See* U.S. Const. art. VI, cl. 2.

**13.** This is so at least with respect to statutes. *See* Judiciary Act of 1789, § 34, 1 Stat. at 92 (codified at 28 U.S.C. § 1652 (1994)) (Rules of Decision Act); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

view by Article III federal courts. *See Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) ("Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court").[14] Indeed, far from exercising appellate review of state court judgments, federal courts are statutorily required to give preclusive effect to those judgments. Under the Full Faith and Credit Act,[15] now codified at 28 U.S.C § 1738, state court judgments have the same force as *res judicata* in federal courts as they have in the state's own courts. *See Mills v. Duryee,* 11 U.S. (7 Cranch) 481, 484, 3 L.Ed. 411 (1813); *see also* Scheidegger, *supra,* at 912. This statute makes no exception for appeal rights to Article III federal courts.

The United States Supreme Court has consistently enforced this statute by giving preclusive effect to state court judgments. For instance, in *Montana v. United States,* the Montana Supreme Court had upheld a state tax as against a challenge by the United States. 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). After voluntarily dismissing a petition for certiorari to the Supreme Court, the government filed suit in district court. Although the Montana Supreme Court's ruling implicated federal supremacy, the Supreme Court held that the state court decision was *res judicata,* even in the Supreme Court, even against the government itself, and even on a subject going to the very heart of federal supremacy. *See id.* at 153–55, 162–64, 99 S.Ct. 970; *see also* Scheidegger, *supra,* at 912.

Likewise, in *Allen v. McCurry,* the Supreme Court rejected the position that the Constitution requires an independent federal judgment on a question passed upon in state court. 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Allen,* a federal appellate court found that a state court determination of probable cause was not *res judicata* in a later federal civil trial under 42 U.S.C. § 1983 for violation of constitutional rights. The Court reversed, finding that the state court determination of probable cause was *res judicata:*

> The actual basis of the Court of Appeals' holding appears to be a generally framed principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises. But the authority for this principle is difficult to discern. It cannot lie in the Constitution, which makes no such guarantee, but leaves the scope of the jurisdiction ... to the wisdom of Congress.

*Id.* at 103, 101 S.Ct. 411.

■ Federal courts are required to respect final state judgments, regardless of whether the issue is one of state or federal law and regardless of whether the federal court agrees with the state court's decision. The only exceptions are those that Congress has made. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("[A]n exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal").

With the AEDPA, Congress has made such an exception, albeit a narrow one.

---

14. In *Atlantic Coast,* the Court further described this cornerstone of our federal system: Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. If the union was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the Florida appellate courts and ultimately, if necessary, in this Court.... Unlike the Federal District Court, this Court does have poten-

tial appellate jurisdiction over federal questions raised in state court proceedings, and that broader jurisdiction allows this Court correspondingly broader authority to issue injunctions necessary in aid of its jurisdiction.

398 U.S. at 296, 90 S.Ct. 1739.

15. *See* Act of May 26, 1790, ch. 11, 1 Stat. 122.

The broad preclusive effect ordinarily due state court judgments is abrogated under the AEDPA to the extent such a judgment is "contrary to, or an unreasonable application of, clearly established Federal law." Again, Congress's restrained approach in providing a limited habeas remedy at minimal cost to the autonomy of state courts is fully consistent with our federal system of government.

## C. Standard of Review Applicable to Dennis's Claims

As noted above, § 2254(d) provides different standards of review depending on whether a state court judgment involves a question of law, fact, or mixed question of law and fact. Thus, in order to determine the specific standard applicable to Petitioner Dennis's claims, the Court must decide whether Dennis's claims involve legal, factual, or mixed questions.

Dennis's claims, discussed more fully in Part V, involve mixed questions of law and fact. At no point does Dennis claim the Ohio Supreme Court applied the wrong legal standard or rule to the facts presented. Rather, Dennis essentially complains that the court misapplied the correct legal standards to the relevant facts.

Section 2254(d)(1) provides that a federal habeas court must determine whether a state court's resolution of mixed questions involves an "unreasonable application" of clearly established federal law, as declared by United States Supreme Court precedent. Therefore, the Court must review the Ohio Supreme Court's judgment to decide if it reflects an unreasonable application of Supreme Court precedent.

Sixth Circuit precedent aids the Court in this endeavor. Though it has yet to adopt a general interpretation of § 2254(d), the Sixth Circuit has addressed the scope of review under the "reasonable application" clause of § 2254(d)(1).

▮▮▮ A reasonable application of Supreme Court precedent, according to the Sixth Circuit, is one " 'debatable among reasonable jurists.' " *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) (quoting *Drinkard*, 97 F.3d at 769). An unreasonable application of precedent, in contrast, is one "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers v. Killinger*, 169 F.3d 352, 361 (6th Cir.1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998)).

## III. Exhaustion and Procedural Default

### A. Exhaustion

A petitioner must have exhausted his state remedies before a writ of habeas corpus can be granted. *See* 28 U.S.C. § 2254(b). The United States Supreme Court in *O'Sullivan v. Boerckel* recently explained the petitioner's duty to present his cause in state court:

In order to satisfy the exhaustion requirement, a state prisoner must present his claims to a state supreme court in a petition for discretionary review when that review is part of the State's ordinary appellate review procedure. As a matter of comity, § 2254(c)—which provides that a habeas petitioner 'shall not be deemed to have exhausted [state court] remedies ... if he has the right under [state] law ... to raise, by any available procedure, the question presented'—requires that state prisoners give state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts. See e.g., *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

To determine whether the exhaustion requirements are met, the Court must examine whether the petitioner "has the right under the law of the State to raise, by any available procedure, the question

presented." 28 U.S.C. § 2254(c). As explained in Part II, Petitioner Dennis has pursued all opportunities for relief at the state level, both on direct appeal and in postconviction proceedings. Petitioner Dennis has exhausted all available state court remedies.[16]

Even if Petitioner Dennis has not exhausted all available state court remedies, the State has waived the exhaustion requirement in this case. (*See* Respondent's Return of Writ at 31 ("The claims in the petition as presently constituted are exhausted").) The Court acknowledges this assertion as a waiver pursuant to 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement ... unless the State, through counsel, expressly waives the requirement").

### B. Procedural Default

Respondent Mitchell argues that Petitioner Dennis is precluded from pursuing Claims 6, 11, 13, 14, 17, and 19 due to procedural default.[17]

Federal courts "will not review questions of federal law decided by a state court if the decision of that court rests upon a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Applied to the habeas context, this doctrine acts to bar federal review of federal claims that a state court has declined to address because of the petitioner's noncompliance with a state procedural requirement. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. 2546.

Although the AEDPA does not expressly include procedural default rules, several courts have determined that pre-AEDPA law regarding procedural default applies under the AEDPA. *See, e.g., Truesdale v. Moore*, 142 F.3d 749, 753 n. 2 (4th Cir. 1998), *cert. denied*, 498 U.S. 932, 119 S.Ct. 380, 142 L.Ed.2d 314 (1998) ("We reject [the] novel suggestion that the AEDPA somehow abolished procedural default."); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998), *cert. denied*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (finding procedural default in an AEDPA case); *Moleterno v. Nelson*, 114 F.3d 629, 633–34 (7th Cir.1997) (noting that "the substantive changes ... made by the [AEDPA] made no change in the procedural default rules"); *Richardson v. Elo*, 974 F.Supp. 1100, 1104 n. 2 (E.D.Mich.1997) (same); *Williams v. Coyle*, No. 96–CV–793 (N.D.Ohio April 2, 1998) (applying pre-AEDPA procedural default rules).

The Sixth Circuit has established a four-step analysis to determine whether a claim has been procedurally defaulted. *See Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986). Based on this test, the Court must determine (1) whether the petitioner failed to comply with an applicable state

---

**16.** As explained in Part IV.B, Petitioner Dennis presented Claim 19 for the first time in his petition for writ of certiorari before the United States Supreme Court. Because Claim 19 depended upon the Ohio Supreme Court's statutorily-prescribed independent analysis of the appropriateness of the death penalty in this case, Petitioner Dennis could not effectively have brought Claim 19 prior to his petition before the United States Supreme Court. The U.S. Supreme Court denied the petition. *See Dennis v. Ohio*, —— U.S. ——, 118 S.Ct. 1078, 140 L.Ed.2d 136 (1998).

Subsequent to the U.S. Supreme Court's denial, Dennis did not raise Claim 19 in state postconviction proceedings; Claim 19 is raised for the first time in this federal proceeding. To the degree Dennis may have failed to exhaust state court remedies under 28 U.S.C. 2254(b)(1), the Court notes that the Respondent Mitchell expressly concedes that Claim 19 is exhausted. (*See* Respondent's Return of Writ at 121.)

**17.** Respondent Mitchell also challenges Claim 14 (challenging the mandatory language of Ohio's sentencing statute) on grounds of procedural default. The Court need not address the issue because Petitioner Dennis abandoned this claim in his Traverse. (*See* Petitioner's Traverse, at 97 n. 21.)

procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "adequate and independent" state ground on which the State can foreclose federal review; and (4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice." *Id.*

The Court now analyzes the claims Respondent Mitchell asserts Dennis procedurally defaulted.

### 1. First *Maupin* Factor

The first *Maupin* factor requires the Court to decide whether Dennis failed to comply with an applicable state procedural rule. Respondent Mitchell argues that Petitioner Dennis has violated procedural rules with respect to Claims 6, 11, 13, 17, and 19.[18] For the reasons discussed below, the Court finds that Petitioner Dennis has failed to comply with Ohio procedural rules with regard to Claims 6, 11, 13, 17, and portions of Claim 7. Dennis, however, has complied with Ohio procedural rules with regard to Claim 19 and the remaining portions of Claim 7.

### a. Claims 6, 11, 13, and 17

Petitioner Dennis did not present Claims 6, 11, 13, and 17 on direct appeal. Respondent Mitchell contends that the doctrine of *res judicata* therefore bars these claims.[19]

**18.** Respondent Mitchell also argues that Dennis has procedurally defaulted portions of Claim 7. In Claim 7, Dennis asserts that the trial court erred in admitting certain exhibits. Respondent Mitchell notes that Dennis did not object to the admission of Exhibits 16 and 17 at trial, and thus Dennis has procedurally defaulted any portion of Claim 7 concerning these exhibits. However, Dennis does not object to the admission of Exhibits 16 and 17 in his petition. Rather, Dennis argues in Claim 7 that the trial court erred in admitting Exhibits 18–20, because these exhibits were duplicative of Exhibits 16 and 17. Dennis had objected to the admission of Exhibits 18–20 at trial, and raised their admission as error on direct appeal. Thus, Dennis has not procedurally defaulted Claim 7.

Ohio has long relied upon the doctrine of *res judicata* to dismiss constitutional claims based upon the record that are raised for the first time in state postconviction proceedings. In *State v. Perry*, the Ohio Supreme Court commented on this application of *res judicata:*

> Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

10 Ohio St.2d 175, Syl. ¶ 9, 226 N.E.2d 104, Syl. ¶ 9 (1967).

Despite his failure to raise various claims on direct appeal, Dennis argues that he has not violated the *Perry* rule. Rather, Dennis asserts that his claims fall within exceptions to the *Perry* rule. Specifically, Dennis contends that his claims either were not ripe for adjudication or depend on evidence outside the record.[20]

First, Dennis says that Claim 11 (lack of competent expert assistance at trial) and Claim 13 (lack of expert assistance as to drug and alcohol abuse) were "not ripe for adjudication during the direct appeals process." (*See* Petitioner's Traverse at 7.)

**19.** Respondent Mitchell also challenges Dennis's fourteenth claim for relief on *res judicata* grounds. However, Dennis has abandoned Claim 14. (*See* Petitioner's Traverse at 97 n. 21.) The Court does not therefore consider whether Claim 14 is barred by the doctrine of *res judicata*.

**20.** Though Dennis cites two other exceptions, these exceptions are of no moment. First, Dennis cites errors that render trial judgments void as an exception to the *Perry* rule. However, Dennis makes no argument as to this exception. Second, Dennis cites issues that raise the specter of ineffective assistance of counsel as an exception to the *Perry* rule. Yet, Respondent Mitchell has not challenged Dennis's ineffective assistance of counsel claim as being procedurally barred.

According to Dennis, it did not become apparent that he had been denied effective expert assistance at trial until after the Ohio Court of Appeals and the Ohio Supreme Court found that various issues raised were not error. Thus, Petitioner Dennis believes he should be excused from the *res judicata* implications under *Perry* for not having brought the claims on direct appeal.

■ The Court fails to see how Petitioner Dennis can be excused from failing to assert Claims 11 and 13 on direct appeal. The record reflects that Petitioner Dennis could have brought these claims on direct appeal. Dennis's conviction alerted him to the potential weakness of his expert's testimony (Claim 11). Dennis's conviction also should have alerted him to issues regarding the effect of his drug and alcohol use (Claim 13), which both Dennis and his expert testified about during the mitigation phase. The evidence does not suggest a lack of "ripeness" regarding either of these claims that would support excusing Dennis from the *Perry* rule.

Beyond ripeness, Dennis says the claims he failed to assert on direct appeal depend on evidence outside the record, and are thus exempt from the *Perry* rule. *See State v. Smith*, 17 Ohio St.3d 98, 101 n. 1, 477 N.E.2d 1128, 1131 n. 1 (1985); *State v. Milanovich*, 42 Ohio St.2d 46, 50, 325 N.E.2d 540, 543 (1975). However, Dennis offers only evidence from the record to support Claims 6 (prosecutorial misconduct), 13, and 17 (improper jury instruction). These claims are therefore subject to the *Perry* rule.

With regard to Claim 11, Petitioner Dennis purports to offer evidence from outside the record to support his argument concerning the weakness of his mitigation expert's testimony. This evidence consists of a report offered by Dr. McPherson questioning the sufficiency and competency of Dr. Brown's mitigation testimony. Dennis contends that Dr. McPherson's report reveals that Dennis was denied his

constitutional right to competent expert assistance during the mitigation phase, as established by the United States Supreme Court in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

The Court finds that the report offered by Dennis does not support Claim 11, and thus Claim 11 is barred under the *Perry* rule.

Dr. McPherson's report does not establish any incompetence by Dr. Brown. In fact, though Dr. McPherson disputes the manner in which Dr. Brown obtained his results,[21] she reports that Dr. Brown's conclusions "can be generally supported in the information obtained" in Dr. McPherson's "elaborated evaluation." Dr. McPherson asserts only that Dr. Brown could and should have gone further in certain aspects of his analysis.

■ However, establishing that Dr. Brown did not carry out his task perfectly does not show constitutional error. The Court in *Ake* did not require that appointed expert mitigation testimony be the best testimony possible. Rather, *Ake* requires an expert to assist a defendant competently and independently. Again, Dr. McPherson's report suggests a lack of neither competence nor independence on Dr. Brown's part.

■ Instead, Dr. McPherson's report serves only as an interpretation that is somewhat more favorable to Dennis's interests. However, habeas corpus is not a forum in which to reargue a case. Habeas review is an extraordinary remedy and "will not be allowed to do service for an appeal." *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994); *Eaton v. Angelone*, 139 F.3d 990, 995 (4th Cir.1998), *cert. denied*, —— U.S. ——, 118 S.Ct. 2338, 141 L.Ed.2d 709 (1998) ("We refuse to transform a federal habeas proceeding into a second trial").

Based on the above, the Court finds that Claims 6, 11, 13, and 17 are barred under the *Perry* rule.

---

21. Dr. McPherson asserts that Dr. Brown's "non-confidential evaluation" of Petitioner Dennis resulted in insufficient "rapport" for a mitigation evaluation.

### b. Claim 19

In Claim 19, Petitioner Dennis argues that the Ohio Supreme Court's alleged failure to consider a relevant mitigating factor in reviewing Dennis's death sentence violates his constitutional rights. Respondent Mitchell asserts that Dennis failed to raise Claim 19 on direct appeal, and is therefore barred from now bringing the claim under the doctrine of *res judicata.*

The Court finds that Dennis did raise Claim 19 on direct appeal, and thus Claim 19 is not procedurally defaulted.

Petitioner Dennis included in his petition seeking a writ of certiorari from the United States Supreme Court the following question: "Can a reviewing court refuse to consider in its independent review and proportionality analysis a proper mitigating factor which arose at trial due to the misconduct of the foreperson of the jury?" The Supreme Court denied the petition.

Here, in Claim 19, Petitioner Dennis contends that the Ohio Supreme Court's failure to consider the misconduct of the jury's foreperson as a relevant mitigating factor unconstitutionally denied Dennis a fair sentencing procedure and appellate review. Thus, Claim 19 raises the same issue Dennis first raised in his petition to the United States Supreme Court.

■ The Supreme Court has held that a state conviction becomes final "when availability of direct appeal to the state courts has been exhausted and time for filing petition for writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). Because Petitioner Dennis raised Claim 19 in his petition before the United States Supreme Court, the claim was raised on direct appeal. Therefore, Claim 19 is not barred from federal review on the grounds of procedural default.

Having found that Petitioner Dennis has violated state procedural rules with regard to Claims 6, 11, 13, and 17, the Court reviews these claims under the second step of the *Maupin* analysis. The Court discusses the merits of Claim 19 in Part V below.

### 2. Second *Maupin* Factor

The second factor in the *Maupin* analysis requires this Court to determine whether the state courts actually enforced the state procedural sanction at issue during postconviction proceedings. Answering this question, the Court finds that the Ohio courts did refuse to consider Claims 6, 11, 13, and 17 based on the *Perry* Rule.

The Summit Court of Common Pleas and the Summit County Court of Appeals explicitly refused to consider Claims 6, 11, 13, and 17 on grounds of *res judicata.*[22] The Ohio Supreme Court implicitly adopted this approach when it denied jurisdiction of Dennis's postconviction appeal.[23]

**22.** In state court proceedings these claims went by different numbers. Claim 6 was raised in postconviction as claim 8. Claim 11 was raised in postconviction relief as claim 18. Claim 13 was raised in postconviction relief as claim 20. Claim 17 was also raised in postconviction as claim 27. Claim 7 was raised in the direct appeals process as Claim 17.

**23.** "The U.S. Supreme Court has adopted a 'look-through' presumption, which holds that [w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). As the U.S. Supreme Court explained:

The maxim is that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect— which simply "looks through" them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play.... Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its

For a federal court to consider a habeas petitioner's claims, those claims must have been considered on their merits by the last state court. "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available." *Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Here, the Ohio courts refused to consider the merits of Claims 6, 11, 13, and 17. Therefore, the state courts enforced the procedural sanction of *res judicata* regarding these claims.

### 3. Third *Maupin* Factor

The third factor in the *Maupin* analysis requires that the Court determine whether the state procedural bar is an "adequate and independent" state ground on which the a state can foreclose federal review. The Court finds that it is.

Dennis argues that the *Perry* rule has been applied selectively and therefore cannot now stand as a sufficient reason for procedural default. This argument lacks merit.

The Sixth Circuit has consistently recognized the *Perry* rule as an independent and adequate ground upon which to procedurally bar consideration of habeas claims. *See Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998); *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998); *see also Amos v. Scott,* 61 F.3d 333, 342 (5th Cir.1995), *cert. denied,* 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995) (stating that "an occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate ...."). Therefore, unless Petitioner Dennis can meet the requirements of the fourth *Maupin* factor, he will be procedurally barred from raising Claims 6, 11, 13, and 17.

### 4. Fourth *Maupin* Factor

When a petitioner cannot overcome the first three *Maupin* factors, the claims are procedurally barred unless the petitioner shows cause and actual prejudice for not raising the claims earlier:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Demonstrating "cause" requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Demonstrating "prejudice" generally requires a petitioner to show that an error "infected" the trial with constitutional error. *United States v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Petitioner Dennis has not shown cause or prejudice sufficient to overcome Ohio's *Perry* rule.

In extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is the conviction of one who

---

effect upon the availability of federal habeas is nil—which is precisely the effect accorded by the "look-through" presumption. *Id.* at 804 & n. 3, 111 S.Ct. 2590.

In this case, the Ohio Supreme Court declined to exercise jurisdiction and dismissed Dennis's appeal as "not involving any sub-

stantial constitutional question." The lack of explanation by the Ohio Supreme Court mandates the "look-through" presumption established in *Ylst.* Therefore, the Ninth District Court of Appeals' holding of *res judicata* stands.

is "actually innocent." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

Petitioner Dennis has not argued that there has been a fundamental miscarriage of justice and has not alleged actual innocence. The evidence as determined below demonstrates no basis for such a claim. To the contrary, the State offered persuasive evidence that Petitioner Dennis murdered Kyle while committing felony robbery.

Because Petitioner Dennis has not shown cause and actual prejudice, Claims 6, 11, 13, and 17 are procedurally barred from federal habeas review. Accordingly, the Court proceeds to consider the remaining claims on the merits.

IV. Evidentiary Hearing and Discovery

Petitioner Dennis requests an evidentiary hearing and a chance to conduct discovery to develop facts in support of his claims. Dennis asserts that Ohio's postconviction relief procedure effectively denied him the opportunity to develop the factual record in state court.

Evidentiary hearings in federal habeas proceedings are controlled by 28 U.S.C. § 2254(e):

1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that

A) the claim relies on—

i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The plain language of § 2254(e) provides that state court findings of fact "shall be presumed to be correct." Thus, federal habeas courts are directed to defer to state court findings of fact. *See Cooey v. Anderson*, 988 F.Supp. 1066 (N.D.Ohio, 1997) ("In general, when reviewing any habeas petition, including a petition in a capital case, a district court must defer to the findings of fact made by the state trial court"). This deference applies to factual determinations made by either a state trial court or a state appellate court. *See Sumner v. Mata*, 449 U.S. 539, 546, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Section 2254 provides only two exceptions to this presumption of correctness: (1) if a new rule of constitutional law applies; and (2) when the claim relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence," and that such facts would establish "by clear and convincing evidence that ... no reasonable factfinder would have found him guilty of the offense." 28 U.S.C. § 2254(e)(A)(ii). Dennis does not claim that a new rule of constitutional law applies. The Court therefore limits its analysis to the second exception.

The findings of fact for the purposes of this proceeding were determined by the Ohio Supreme Court in *State v. Dennis*, 79 Ohio St.3d 421, 683 N.E.2d 1096 (1997). In reviewing Dennis's request for postconviction relief, the Ohio courts deferred to these findings.

Dennis must show that the factual predicate for his claim could not have been discovered through due diligence. Under § 2254(e), a petitioner is required to attempt to develop facts at trial. If that attempt fails after due diligence, then an evidentiary hearing may be proper.

Dennis argues that he tried to develop the facts when he requested a hearing in his state postconviction relief petition. When the state court rejected this request, Dennis argues he was denied a constitutional right to develop the record. He claims that Ohio's postconviction proceedings do not satisfy due process requirements by failing to afford him a fair and adequate hearing.

Petitioners in Ohio state courts can request an evidentiary hearing in postconviction relief proceedings. Under Ohio Revised Code § 2953.21, the court will conduct an evidentiary hearing unless "the petition and the files and records of the case show the petitioner is not entitled to relief."

In Dennis's case, the Summit County Court of Appeals stated that "the defendant must submit evidentiary documents containing sufficient operative facts to demonstrate that his constitutional rights were violated." *State v. Dennis,* 1997 WL 760680, at *5 (Ohio App.9th Dist. Nov. 19, 1997). In denying Dennis's request for an evidentiary hearing, the court explained: "nothing contained in these documents establishes sufficient operative facts to demonstrate a constitutional violation." *Id.*

Here, Dennis essentially claims Ohio's postconviction system is constitutionally infirm because it makes it too difficult for petitioners to receive an evidentiary hearing. This argument is unpersuasive.

 While strict, Ohio's postconviction system does not violate the Constitution. The United States Supreme Court has stated that a postconviction system is unconstitutional when state rules act as "snarls or obstacles [and] preclude an effective state remedy against unconstitutional convictions." *Bartone v. United States,* 375 U.S. 52, 54, 84 S.Ct. 21, 11 L.Ed.2d 11 (1963). Ohio's system does not preclude a remedy; it merely forces a petitioner to prove he or she is entitled to a remedy.

Dennis offers only his unsuccessful constitutional attack on Ohio's postconviction system as grounds for a hearing and discovery. Dennis has not attempted to show to this Court a previously undiscovered factual predicate that establishes, by clear and convincing evidence, that no reasonable factfinder could find him guilty of the offense. Thus, the Court denies Dennis's request for an evidentiary hearing and discovery.

The Court now turns to the merits of Dennis's individual claims for relief.

## V. Individual Claims for Relief

### A. First Claim for Relief

Petitioner Dennis's first claim for relief states that:

> Petitioner Dennis was Denied his right to a fair trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the trial court failed to remove the foreperson of the jury from the panel when it was discovered that she was being represented by the state as a victim of sexual abuse.

Dennis argues that because of her status as a victim of sexual abuse, Juror Harris could not execute her duties as a juror in an impartial manner. The Court finds no merit in this argument.

The trial court became aware that Juror Harris had been a victim of sexual abuse when a detective asked the court to momentarily excuse Harris from deliberations in order to sign a criminal complaint. When the trial court judge learned of this, he brought Harris into chambers with the parties and conducted a voir dire.

In voir dire, Harris explained that she had decided not to mention the sexual abuse during the original voir-dire examination because she did not feel it fit the definition of violent crime.[24] Harris told the trial court judge that her experience was not "violent" when compared to mur-

---

24. Juror Harris apparently reached this conclusion after asking the trial judge's bailiff during jury selection for a definition of "violent crime."

der. Therefore, she did not bring it to the court's attention.

Under extensive questioning, Harris was adamant that her experience with sexual abuse had nothing to do with Dennis's case. She stated she could separate the two experiences and serve impartially as a juror. The court asked defense counsel if they had anything they wished to put on the record. The defense counsel said they did not.

After Harris returned to the jury room, counsel for Petitioner Dennis and the State told the trial court that before the trial they became aware that Harris had been a witness to sexual abuse. With this information, Dennis did not act before trial to excuse Juror Harris or to seek more particular questioning of her. Dennis says he did not, however, know that Juror Harris had been a purported victim of sexual abuse.

After this voir dire, Petitioner Dennis did not ask the court to excuse Juror Harris. However, at the end of the trial, defense counsel filed a motion for mistrial.

In rejecting Dennis's direct appeal of this issue,[25] the Ohio Supreme Court ruled that a trial court has broad discretion in determining a juror's ability to be impartial. The court found that the trial court's decision to allow Harris to remain on the jury was not an abuse of discretion, especially in light of the court's voir-dire examination of Harris conducted in chambers during penalty-phase deliberations.

With respect to this claim, the Ohio Supreme Court's decision was not an unreasonable application of clearly established federal law.

At the time of the trial and appeal, the United States Supreme Court's opinion in *McDonough Power Equipment, Inc., v. Greenwood* controlled this issue. 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). In *McDonough,* a juror failed to reveal during the voir dire in a products

liability case that his son had suffered a broken leg from an exploding tire. The juror had been asked if any immediate family member had ever sustained a serious injury.

In denying a new trial, the Supreme Court found that the juror "apparently believed that his son's broken leg sustained as a result of an exploding tire was not such an injury." *Id.* at 555, 104 S.Ct. 845. The Court observed that jurors "may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." *Id.*

The Court in *McDonough* noted that a litigant "is entitled to a fair trial but not a perfect one, for there are no perfect trials." *Id.* at 553, 104 S.Ct. 845 (quoting *Brown v. United States,* 411 U.S. 223, 231–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)). The Court thus urged reviewing courts to "ignore errors that do not affect the essential fairness of the trial." *Id.* at 553, 104 S.Ct. 845.

Under *McDonough,* in order "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause ... but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough,* 464 U.S. at 555, 104 S.Ct. 845.

Therefore a party must show that a juror dishonestly answered a question on voir dire and that a correct response would have provided a challenge for cause.

■ Petitioner Dennis makes no showing that Juror Harris failed to answer a material question honestly. When questioned in chambers, Juror Harris said, "I decided what happened to me by your definition of violent would not be violent." (*See* Trial Tr. at 1508.) After observing

---

**25.** Petitioner Dennis presented this claim to the Ohio Supreme Court as Proposition of

Law No. 5.

her demeanor, the trial judge accepted Juror Harris's explanation and stated that "I think we would understand how you interpret it, that it might not have been as clear as it probably should have." (*Id.*) This misunderstanding of a word or phrase is similar to the facts of *McDonough*, where the Supreme Court stated that a juror misunderstanding certain legal words is to be expected.

Petitioner Dennis also fails to show that Juror Harris could have been challenged for cause had she revealed her status as a rape victim. The challenge for cause of jurors in criminal cases in Ohio is governed by rule and by statute.[26] Under both, the only arguably plausible grounds for excusing Juror Harris for cause would be that she possessed "a state of mind evincing enmity or bias toward the defendant or the state." No evidence supports excusing juror Harris for cause under this standard. That Juror Harris's victimization at the hands of her father would have

effect in the completely dissimilar circumstances attending the killing of Kyle strains credulity.

Unless a state procedural rule implicates constitutional rights, it is of no moment in a habeas corpus petition. Petitioner Dennis must show that constitutional rights were violated when the trial judge denied his request for a mistrial based upon Juror Harris's original voir dire.

A challenge for cause is designed to remove a juror who is partial to one side or who has formed an opinion prior to hearing the evidence. The United States Supreme Court has explained that the party seeking exclusion must show that the "potential juror lacks impartiality." *Wainwright v. Witt,* 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). As with any other trial situation where an adversary wishes to exclude a juror because of bias, then, it is the adversary seeking exclusion who must demonstrate,

---

**26.** Under Ohio Criminal Rule 24(B), challenges for cause can only be made for limited reasons:

(B) Challenge for cause
A person called as a juror may be challenged for the following causes:
(1) That he has been convicted of a crime which by law renders him disqualified to serve on a jury.
(2) That he is a chronic alcoholic, or drug dependent person.
(3) That he was a member of the grand jury which found the indictment in the case.
(4) That he served on a petit jury drawn in the same cause against the same defendant, and such jury was discharged after hearing the evidence or rendering a verdict thereon which was set aside.
(5) That he served as a juror in a civil case brought against the defendant for the same act.
(6) That he has an action pending between him and the State of Ohio or the defendant.
(7) That he or his spouse is a party to another action then pending in any court in which an attorney in the cause then on trial is an attorney, either for or against him.
(8) That he has been subpoenaed in good faith as a witness in the case.
(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned

as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
(10) That he is related by consanguinity or affinity within the fifth degree to the person alleged to be injured or attempted to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted; or to the defendant.
(11) That he is the person alleged to be injured or attempted to be injured by the offense charged, or the person on whose complaint the prosecution was instituted, or the defendant.
(12) That he is the employer or employee, or the spouse, parent, son, or daughter of the employer or employee, or the counsellor, agent, or attorney, of any person included in subsection (B)(11).
(13) That English is not his native language, and his knowledge of English is insufficient to permit him to understand the facts and the law in the case.
(14) That he is otherwise unsuitable for any other cause to serve as a juror.
Ohio Revised Code § 2945.25 provides similar grounds for challenge.

through questioning, that the potential juror lacks impartiality. *Id.*

■ In judging whether the trial court erred in failing to exclude a juror on grounds of claimed bias, "deference must be paid to the trial judge who sees and hears the juror." *Id.* at 425–26, 105 S.Ct. 844. This is because the trial judge's "predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record." *Id.* at 429, 105 S.Ct. 844. Accordingly, the Supreme Court has held that the "trial court's determination that a prospective capital sentencing juror was properly excluded for cause" is a factual issue which is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Id.* at 428–29, 105 S.Ct. 844.[27]

■ Likewise, a trial judge's finding of juror impartiality is entitled to deference. This established concept began in *Reynolds v. United States,* when the United States Supreme Court held that:

The finding of the trial court upon [the question of a juror's partiality] ought not to be set aside by a reviewing court unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found that the juror had formed an opinion that he could not in law be impartial. The case must be one in which it is manifest that the law left nothing to the court's conscience or discretion.

98 U.S. 145, 156, 25 L.Ed. 244 (1878).

This practice of deferring to the trial court's finding of impartiality has been upheld numerous times in cases citing the *Reynolds* standard. The Supreme Court referred to this clearly established standard in *Irvin v. Dowd,* when the court stated that "[t]he rule was established in *Reynolds* that '[t]he finding of the trial court upon that issue [the force of a prospective juror's opinion] ought not to be set aside by a reviewing court, unless the error is manifest.'" 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (quoting Reynolds, 98 U.S. at 156); *Mu'Min v. Virginia,* 500 U.S. 415, 428–29, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).

At Dennis's trial, the trial court judge questioned Juror Harris and found her impartial. During the judge's in chambers examination, Harris commented about her impartiality:

I do not foresee any problem at all. I have tried very hard. You have made it very clear that your emotions do not direct what you are doing in making your decision and it's very hard to separate those emotions, but I am able to do that and I am doing my job as I have been instructed by you.

(Trial Tr. at 1510–11.)

The *Reynolds* standard of impartiality holds that it must have been clear on the evidence that the juror was partial. In this case Juror Harris stated that she was and would continue to be impartial and the trial judge believed Harris. In *Patton v. Yount,* the ultimate question as to impartiality was whether the trial judge believed the juror's "protestations of impartiality." 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Here, the trial judge believed Juror Harris's "protestations of impartiality"; this court must defer to that finding.

Dennis also claims that because Juror Harris was involved in a criminal action against her father, she was being represented by the State at the same time as the State was a party in the present case. But Juror Harris was not a party to the criminal case against her father. She was a witness against her father, not a party. The only parties involved in a criminal action are the state and the defendant.

27. Although § 2254(d) was amended after the *Wainwright* decision, the presumption of correctness still applies to factual findings. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

Therefore, Juror Harris is not being represented by the State and Dennis in no way displayed any bias Juror Harris may have had in favor of the State.

Based on the above, the Court overrules Dennis's first claim for relief.

### B. Second Claim for Relief

Dennis's second claim for relief states that:

Petitioner Dennis was denied his rights to due process of law and a fair trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because of the excusal for cause of potential jurors in petitioner's case based on their views of the death penalty.

Dennis claims that a violation of his constitutional rights resulted from the excusal of prospective jurors Spencer and Williams. Dennis argues that it was unconstitutional to remove them based upon their belief against the death penalty. The Court disagrees.

In rejecting this claim,[28] the Ohio Supreme Court held that the trial court properly excused Spencer and Williams after finding their views on capital punishment would substantially impair their ability to follow the law as jurors. In so finding, the Ohio Supreme Court reasonably applied clearly established federal law. Specifically, the court followed the correct controlling United States Supreme Court precedent of *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

In *Wainwright*, the Court set for the appropriate standard for excusing jurors for cause, stating that a court must determine:

whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oaths; in addition to dispensing with any reference to "automatic" decision making, this standard does not require that the juror's

bias be proved with unmistakable clarity.

*Id.* at 424, 105 S.Ct. 844.

Here, both Spencer and Williams stated that they could not follow the law and recommend the death penalty. Before trial, the prosecutor, using the *Wainwright* language, asked juror Spencer if her "moral belief against the death penalty would substantially impair your ability to do that, to follow the law." Spencer then replied "Yes," indicating that her beliefs prohibited her from following the law. (Trial Tr. at 351.)

Similarly, the trial judge asked juror Williams if she could follow the law: "Our question to you is simply do you feel that you can go through that analysis, follow the law and make that recommendation if the circumstances of this case warrant it?" Williams simply replied "No." (*Id.* at 368.)

In *Wainwright*, after the juror stated she could not follow the law the trial court excused her for cause. The Supreme Court upheld this decision, stating that the "juror was properly excused for cause relating to her views on the death penalty, as there was ample support for the trial court's finding that her views would have prevented or substantially impaired the performance of her duties as a juror." *Wainwright*, 469 U.S. at 430, 105 S.Ct. 844.

Likewise, this Court finds that the trial court acted properly in excusing Spencer and Williams based on their views toward capital punishment. Therefore, the Court overrules Dennis's second claim.

### C. Third Claim for Relief

For his third claim, Dennis argues:

Petitioner Dennis was deprived of his right to a fair trial and sentencing in violation of the Eighth and Fourteenth Amendments to the United States Constitution by the trial court's denying defense counsel the opportunity to

---

**28.** Petitioner Dennis presented this claim to the Ohio Supreme Court as Proposition of Law No. 8.

question prospective jurors concerning mitigating evidence.

Dennis claims that it was a constitutional violation to prohibit him from asking each juror specific mitigating factors, such as age, lack of prior criminal history, and other mitigating factors. The Court finds no merit in this claim.

In rejecting this claim,[29] the Ohio Supreme Court found that Dennis's trial attorney had been allowed adequate, detailed questioning of prospective jurors to expose faults that would render a juror ineligible. The Ohio Supreme Court found that Dennis did not show that the trial court had abused its discretion in controlling the scope of voir dire examination.

■■■ The Ohio Supreme Court's decision was not an unreasonable application of clearly established federal law. The United States Supreme Court has ruled that the Constitution requires only that the voir dire be sufficient to reveal potential biases. *See Mu'Min*, 500 U.S. at 431, 111 S.Ct. 1899. There is no constitutional duty to ask potential jurors questions of mitigating evidence. The only constitutional duty as found by the Supreme Court is to conduct voir dire in a fashion that will meet the demands of fairness. *See Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *Mu'Min*, 500 U.S. at 425, 111 S.Ct. 1899 (stating that for questions to be constitutionally compelled "it is not enough that such questions might be helpful," but rather "the failure to ask these questions must render the defendant's trial fundamentally unfair").

Moreover, the Court has recognized that a trial court has broad discretion in regard to scope of voir dire. "Voir dire 'is conducted under the supervision of the [trial] court, and a great deal must, of necessity, be left to its sound discretion.'" *Ristaino v. Ross*, 424 U.S. 589, 594, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976) (quoting *Connors v.*

*United States*, 158 U.S. 408, 413, 15 S.Ct. 951, 39 L.Ed. 1033 (1895)).

In this case, the Court finds that the voir dire conducted by the trial court was adequate to reveal potential biases of jurors. The trial court's failure to allow questions on specific mitigating evidence did not render the trial fundamentally unfair. Accordingly, the Court overrules Dennis's third claim.

**D. Fourth and Fifth Claim for Relief**

In his fourth claim for relief, Petitioner Dennis argues:

Petitioner Dennis was deprived of his right to due process of law and a fair hearing in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution when the state excluded from the jury panel all prospective jurors with some reservations about the death penalty.

Dennis's fifth claim for relief states that:

Petitioner Dennis was denied a fair trial and his rights to due process of law in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because of the state's use of its peremptory challenges to excuse African–Americans from the jury panel.

As these claims involve the same two jurors and the same evidence, the Court addresses them together.

Dennis claims that eliminating prospective jurors Dortch and McGinnis was a constitutional violation. Petitioner Dennis says these jurors had reservations about the death penalty and were wrongly excluded because of these reservations. Dennis also claims that the removal of these same jurors, both of whom were African–Americans, was unconstitutionally based on race. The Court finds Dennis's claims lack merit.

The Ohio Supreme Court rejected both of Dennis's claims.[30] First, the court overruled Dennis's claim that Dortch and

---

**29.** Petitioner Dennis presented this claim to the Ohio Supreme Court as Proposition of Law No. 6.

**30.** Dennis presented his fourth claim to the Ohio Supreme Court as Proposition of Law

No. 9. Dennis presented his fifth claim to the Ohio Supreme Court has Proposition of Law No. 7.

McGinnis were improperly excluded because of their reservations regarding the death penalty. In so holding, the court found that the use of peremptory challenges to exclude prospective jurors McGinnis and Dortch did not implicate Dennis's constitutional rights. The court reasoned that, apart from excluding prospective jurors based on gender or race, prosecutors can exercise a peremptory challenge for any reason, without inquiry, and without a court's control.

The Ohio Supreme Court also rejected Dennis's argument that exclusion of prospective jurors McGinnis and Dortch was improperly based upon race. Rejecting Dennis's claim, the court found that record evidence supported the trial court's conclusion that the exclusion of McGinnis and Dortch resulted from a neutral rather than a racial motivation.

In reaching its decision with respect to Dennis's fourth and fifth claims, the Ohio Supreme Court reasonably applied clearly established federal law.

■■■ First, regarding Dennis's fourth claim for relief, the United States Supreme Court has held that peremptory challenges may be used for any reason so long as they are not based on immutable characteristics like race and sex. *See Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). A prosecutor can exercise a peremptory challenge for any nondiscriminatory reason, including a prospective juror's views regarding the death penalty.

With regard to Dennis's fifth claim, the Ohio Supreme Court properly applied the United States Supreme Court's holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson,* the Court stated that to establish a prima facie case of purposeful discrimination, an accused must demonstrate (1) that members of a recognized racial group were peremptorily challenged, and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenges

to exclude prospective jurors on account of their race. If the accused makes a prima facie showing of discrimination, the state must come forward with a neutral explanation. The trial court then ultimately determines whether the defendant has established purposeful discrimination.

■■■ In this case, the prosecution offered several neutral explanations for the exclusion of McGinnis and Dortch. First, the prosecutor explained that he used peremptory challenges on McGinnis and Dortch based, at least in part, on their views of the death penalty. Both prospective jurors expressed opposition to the death penalty on religious grounds. Though both prospective jurors eventually said they could impose a death sentence, both were nevertheless opposed to capital punishment.

Moreover, the prosecutor noted that prospective juror Dortch had a cousin that had been murdered and a son that had been convicted of a serious crime. Also, the prosecutor explained that prospective juror McGinnis was consistently late and the only one confused about the jury procedures.

After directly observing the voir dire questioning, the trial judge found the use of peremptory challenges was not motivated by impermissible considerations. The trial judge stated that when Dortch and McGinnis were excused: "I consciously reviewed the circumstances relative to each of these two ladies and having no specific request at that time to place it on the record, it was the Court's determination that with *Batson* in mind, that at least in this Court's opinion that these were acceptable challenges on behalf of the state." (Trial Tr. at 833–34.)

■■■ The Ohio Supreme Court concluded that the trial court did not err in accepting the prosecutor's neutral explanations for the exclusion of McGinnis and Dortch. This Court finds no error in the Ohio Supreme Court's holding.[31]

---

**31.** In finding no error with the Ohio Supreme Court's holding, the Court is essentially accepting the factual determinations of the trial

court. When reviewing factual determinations, this Court must "accord ... great re-

Based on the above, the Court overrules Dennis's fourth and fifth claims for relief.

### E. Seventh Claim for Relief

Dennis's seventh claim for relief states that:

Petitioner Dennis was denied his right to a fair trial, due process, and a reliable determination of his guilt in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution because of the admission of gruesome, repetitive, and cumulative photographs.

In this claim, Dennis says the admission of exhibits 18–20 was prejudicial error because the photographs were repetitive and gruesome depictions of the victim. The Court rejects this claim.

In rejecting this claim,[32] the Ohio Supreme Court observed that the admission of photographs and similar evidence is left to the sound discretion of the trial court. The court found that gruesome photographs are admissible if the probative value of each photograph outweighs the danger of material prejudice to the accused. Examining exhibits 18, 19, and 20 under this standard, the Ohio Supreme Court found Dennis's claim without merit.

Dennis objected to State Exhibit 18, which showed Kyle's body on the ground in his driveway next to Eberhart's car. In this photograph, Kyle has his hand in his pocket. The court found that this photo supports Eberhart's testimony as to the robbery, in that Kyle may have been searching through his pockets looking for money.

Dennis also claims that the admission of State Exhibit 19 was constitutional error. This photograph shows a closer view of Kyle's body, shows the wound on the right

side of his head, and his head in a pool of blood. The Ohio Supreme Court found this photograph corroborative of Eberhart and the expert's testimony that Kyle was shot at point blank range. It also supports Eberhart's and the coroner's testimony as to the cause and immediacy of death, and is probative of Dennis's purposeful intent.

Dennis finally claims that State Exhibit 20 was unconstitutionally admitted. This photo, a close-up of Kyle's head, shows the entrance wound from the shotgun blast. In examining this claim, the court found this photograph to be arguably cumulative to the others, especially State Exhibit 19. But while this photograph was arguably cumulative, the Ohio Supreme Court found that it did not affect Dennis's substantial rights.

■■■■■ The Ohio Supreme Court's decision was not an unreasonable application of clearly established federal law. To succeed on this claim, Dennis must show that the state court's evidentiary ruling violated due process. Erroneous evidentiary rulings do not, in and of themselves, violate the Constitution. "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citing *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.*

■■■■ The ultimate question, then, is whether the claimed error was so egregious as to have nullified the legitimacy of the properly admitted substantive evidence

---

spect to the conclusions of the state judiciary." *Hernandez v. New York,* 500 U.S. 352, 370, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Pierre v. Louisiana,* 306 U.S. 354, 358, 59 S.Ct. 536, 83 L.Ed. 757 (1939). This Court must accept the trial court's decision on disputed issues of fact "unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process." *Lisenba*

*v. California,* 314 U.S. 219, 238, 62 S.Ct. 280, 86 L.Ed. 166 (1941). Here, in light of the evidentiary support for the trial court's decision, this Court appropriately defers to the trial court's findings.

**32.** Upon direct appeal to the Ohio Supreme Court, Dennis presented this claim as Proposition of Law No. 17.

of the defendant's guilt. *See Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990); *see also Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Donnelly v. De-Christoforo*, 416 U.S. 637, 642, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (stating that absent a specific constitutional violation, federal habeas review of trial error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

█ Here, the admission of these photographic exhibits did not make Dennis's trial unfair or in any way nullify the legitimacy of the substantial additional evidence of Dennis's guilt. Thus, their admission did not violate Dennis's constitutional rights. For this reason, the Court denies Dennis's seventh claim for relief.

### F. Eighth and Sixteenth Claims for Relief

For his eighth claim for relief, Dennis argues that:

Petitioner Dennis was denied a fair trial and due process of law in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by the introduction of victim impact testimony at his trial.

Dennis's sixteenth claim for relief states that:

Petitioner Dennis was deprived of his right to due process of law, a fair hearing and a fair sentencing in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the trial court permitted victim impact testimony at the sentencing of Mr. Dennis.

The Court addresses these two claims together as they rely on the same theory of law.

█ During the mitigation phase of Dennis's trial, the trial court allowed victim-impact testimony by Craig Kyle, brother of the decedent, and Doreen Kyle, the decedent's mother. Dennis contends the trial court committed constitutional error by allowing this victim-impact testimony. The Court rejects Dennis's argument.

The Ohio Supreme Court overruled Dennis's claims, holding that the trial court did not commit prejudicial error in allowing victim-impact testimony.[33] The court found this victim-impact evidence was limited to Craig Kyle's testimony about the close relationship he had experienced with his brother, and his deceased brother's good relationship with his parents. After the jury was discharged but before a sentence was pronounced, Doreen Kyle made a statement eulogizing her late son. Neither Craig Kyle nor Doreen Kyle's statement expressed any opinion or suggestion as to what sentence should be imposed on the defendant.

In deciding that the admission of Doreen Kyle's statement was not prejudicial error, the Ohio Supreme Court noted that Doreen Kyle only made a statement after the jury was discharged. Her statement could not have affected the jury's sentence recommendation. Although the judge passing sentence heard Doreen Kyle's statement, the court presumed, after finding no contrary indication in the record, that the judge considered only appropriate evidence in arriving at a judgment. *See United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir.1972) (noting that a judge in a bench trial is presumed to consider only admissible evidence and that the introduction of incompetent evidence does not require reversal absent an affirmative showing of prejudice).

The Ohio Supreme Court's decision was not an unreasonable application of clearly established federal law. The court cited and properly followed the United States

---

**33.** Petitioner Dennis presented these claims to the Ohio Supreme Court as Proposition of Law Nos. 10 and 13.

Supreme Court's decision in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

The Supreme Court in *Payne* held that the Eighth Amendment does not impose a federal requirement on state evidentiary procedures related to "victim impact" evidence:

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that victim impact evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as whether or not the death penalty should be imposed. There is no such reason to treat such evidence differently than other relevant evidence is treated.

*Payne,* 501 U.S. at 827, 111 S.Ct. 2597.

It is clear that the trial judge followed *Payne*'s holding during the trial. The counsel for defense acknowledged this when counsel objected to the impact testimony and to *Payne* because he felt it took the "spunk" out of mitigation. (Trial Tr. at 1374.) The trial court found this evidence fully admissible with *Payne* in mind. This Court will not overturn that decision. Petitioner Dennis's eighth and sixteenth claims for relief are overruled.

### G. Ninth Claim for Relief

As to his ninth claim for relief, Dennis argues:

> Petitioner Dennis was deprived of his rights to due process of law and a fair hearing as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by the trial court's failure to suppress his statements which were given in violation of *Miranda v. Arizona.*

 Petitioner Dennis argues that he failed to make a voluntary waiver of his *Miranda* rights because he claims he consumed two joints of marijuana before his interrogation. The Court finds no merit in this argument.

In rejecting this claim, the Ohio Supreme Court found that Dennis gave a taped statement only after having been given and having waived his *Miranda* rights.[34] The court first held that whether an accused voluntarily, knowingly, and intelligently waived his right to counsel and right against self–incrimination is measured by the totality–of–circumstances standard. Applying this standard, the court found Dennis's waiver valid.

The court found that Dennis stated, in the taped statement, that he had not been under a Doctor's care or on any medications, and had not consumed any alcohol. Although Dennis claimed to have smoked "two joints" of marijuana earlier in the evening of his interview, the officers interviewing him stated that nothing in Dennis's behavior caused the interviewers to believe that Dennis was intoxicated. The Ohio Supreme Court also found Dennis's responses in the taped interview not to exhibit any of the usual symptoms·of intoxication, such as slurred speech, inattentiveness, and inability to understand questions.

Moreover, the court noted that the police had read Dennis each *Miranda* right and asked if he understood it. Dennis responded yes and initialed each line on a *Miranda* warning form acknowledging that he had understood his rights. The court found that at the time he signed the waiver of rights, there was no evidence that police subjected Dennis to threats or physical abuse, or deprived him of food, sleep, or medical treatment.

The Ohio Supreme Court's decision was not an unreasonable application of clearly established federal law. In *North Carolina v. Butler,* the United States Supreme Court held that when waiver is at issue, the court must examine "the particular facts and circumstances surrounding that case, including the background, experi-

---

**34.** The Ohio Supreme Court dealt with this claim as Proposition of Law No. 1.

ence, and conduct of the accused." 441 U.S. 369, 374, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The Court went on to state that "an express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver." *Id.* at 374, 99 S.Ct. 1755.

To have a waiver upheld, the Supreme Court has consistently held that a state need only show by a preponderance of the evidence that the waiver was voluntary and knowing. "Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claim was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Id.* at 169.

Here, the evidence strongly supports the Ohio Supreme Court's finding that Dennis's voluntarily waived his *Miranda* rights. The evidence fails to suggest that Dennis was in any way impaired at the time of the waiver, or that the police engaged in any coercive activity. *See id.* ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment."). Moreover, Dennis signed a written waiver indicating that he understood the nature of his waiver.

Under the totality of the circumstances, Dennis made a knowing, voluntary, and intelligent waiver of his constitutional rights. This Court therefore rejects Dennis's ninth claim for relief.

### H. Fifteenth Claim for Relief

For his fifteenth claim, Dennis says:

Petitioner Dennis was deprived of his rights to due process of law and a fair hearing in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by the Trial Court's failure to properly instruct the jury when they were unable to come to a unanimous verdict on death.

During the sentencing phase of petitioner's trial, the jurors sent a note to the judge with a question as to how to proceed when after four votes they could not reach a unanimous verdict. The judge responded by instructing the jurors to keep deliberating and to reread the instructions. Petitioner Dennis claims this instruction was incorrect pursuant to Ohio law and prejudiced the petitioner. The Court rejects Dennis's claim.

The Ohio Supreme Court overruled Dennis's claim after concluding the trial court's instruction was proper.[35] The court noted that the jury had deliberated only a short period of time and had not explicitly indicated it was at an impasse. Thus, the court found the trial court was warranted in offering its neutral and non-coercive instruction.

In so holding, the Ohio Supreme Court reasonably applied clearly established federal law. Specifically, the court's decision is in accord with the United States Supreme Court's opinion in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

In *Allen*, the Court approved the practice of admonishing a deadlocked jury to make further effort to reach a verdict. This approval flows from the core interest in seeking unanimity:

The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men

---

**35.** Dennis presented this claim to the Ohio Supreme Court as Proposition of Law No. 12.

who are equally honest and intelligent as himself.

*Id.* at 501–502, 17 S.Ct. 154, cited with approval in *Lowenfield v. Phelps,* 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

■ However, an instruction must not coerce jurors into abandoning their views solely for the purpose of achieving unanimity. *See Jenkins v. United States,* 380 U.S. 445, 445–46, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam). Such coercion may render a petitioner's trial fundamentally unfair and thus result in a constitutional violation.

■ In this case, the trial court's instruction appropriately reflected an interest in achieving unanimity without any indication of coercion. The court simply informed the jurors that they had not deliberated for very long and thus should continue to deliberate. Nothing shows that the independent judgment of any juror was overcome by this instruction.

Based on the above, the Court overrules Dennis's fifteenth claim for relief.

### I. Tenth Claim for Relief

For his tenth claim, Dennis states:

Petitioner Dennis was denied the right to effective assistance of trial counsel during all phases of his capital trial in violation of his rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Dennis asserts that because of his defense counsel's ineffectiveness at various stages of the proceedings, his trial was rendered unfair and the verdict suspect. Dennis claims that his counsel was ineffective in several respects:

a) During *Voir Dire,* defense counsel failed to object to the prosecutor's statement to the jury that if the aggravating circumstances outweigh the mitigating factors that the juror *must* return a verdict of death and that this verdict was only a recommendation.

b) During *Voir Dire,* defense counsel failed to object to the trial court's over emphasis of the death penalty, combined with the instruction that a verdict of death was only a recommendation to the Court in its questioning of the jurors.

c) During *Voir Dire,* defense counsel failed to inquire about various mitigating factors.

d) Defense counsel failed to inform the jurors or request that the trial court inform the jury that intoxication could be considered for its effect on petitioner's mental state and the *mens rea* of the several offenses charged.

e) Defense counsel failed to timely object to the peremptory challenges by the State to excuse two African–Americans from the jury panel (e.g. jurors McGinnis and Dortch) pursuant to *Batson v. Kentucky.*

f) Defense counsel failed to timely object to the excusal for cause of two potential jurors based on their views of the death penalty (e.g. jurors Spencer and R. Williams).

g) Defense counsel failed to request a specific instruction that petitioner's drug and/or alcohol intoxication at the time of the offense should be considered as a mitigating factor under Rev.Code § 2929.04(B)(7).

h) Defense counsel failed to object to request an instruction pursuant to *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, when the jury indicated to the trial court that they were unable to come to a decision at the sentencing phase of petitioner's trial despite having voted four times.

The Court finds no merit in Dennis's claim.

The Ohio Supreme Court rejected this claim.[36] The court first set forth the standard for ineffective performance of counsel, noting that Dennis needed to show (1) "that counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense [so seriously] as to deprive the defendant of a fair trial."

---

**36.** Before the Ohio Supreme Court, this claim was presented as Proposition of Law No. 15.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to the latter requirement, the court noted that "prejudice" is defined as "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Dennis,* 79 Ohio St.3d at 436–437, 683 N.E.2d at 1109. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

█ Using this standard, the Ohio Supreme Court first reviewed Dennis's counsel's failure to object to the trial court's statements to prospective jurors that their role in the penalty phase was merely to "recommend" a sentence. The court found, based on its past precedent, that counsel's decision not to interrupt reflected an objective standard of reasonable representation. In so finding, the court held that an accurate instruction regarding the jury's responsibility does not violate *Caldwell v. Mississippi,* 472 U.S. 320, 342, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (O'Connor, J., concurring).

█ When a defendant claims that improper jury instructions resulted in a Caldwell violation, she "must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams,* 489 U.S. 401, 407, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). If the challenged instructions accurately described the role of the jury under state law, there is no basis for a *Caldwell* claim. To establish a Caldwell violation, a defendant must show that the remarks to the jury improperly described the role assigned to the jury by local law. *Id.* The Ohio Supreme Court found that nothing in the prosecutor's comments improperly described the role assigned to the jury.

█ The court then rejected Dennis's claim of ineffective counsel based on his failure to tell the jury that intoxication could be considered for its effect on the accused's mental state and the mental element of the crime. The court found that counsel's decision not to pursue some type of intoxication defense was reasonable, especially because two key witnesses, Pizer and Eberhart, testified that Dennis did not appear intoxicated. Moreover, the court noted that, according to its past rulings, intoxication can coexist with purpose to kill.

The court also found no merit in Dennis's claim that his counsel was ineffective for failing to object (1) to the State's use of peremptory challenges to excuse two African–American jurors, and (2) to the excusal for cause of two jurors based on their views of the death penalty. Having already concluded that the challenges were proper, the court found that counsel's failure to object did not constitute error.

█ The court also rejected Dennis's assertion that his counsel was ineffective for failing to request an instruction on intoxication as a mitigating factor. The court observed that, in light of its past rulings, voluntary intoxication is at best a weak mitigating factor. In addition, the court explained that, as a matter of state law, trial courts are not required to instruct the jury on individual, nonstatutory mitigating factors that a jury may consider under the "catch-all" factor found at Ohio Revised Code § 2929.04(B)(7).

Finally, the Ohio Supreme Court found no merit in Dennis's argument that his trial counsel was ineffective for failing to request a supplemental jury instruction when the jury indicated difficulty reaching a verdict as to the punishment. The court noted that the jury was not deadlocked. It had deliberated only a few hours before it posed the question in issue.[37] When informed of the jury's difficulty, the trial court offered the jury the following direction: "This has been a very short time of deliberation on a very major case. You

---

**37.** After having deliberated a few hours on the issue of whether the death penalty should be imposed, the jury sent a note to the court asking, "Judge Spicer, what do we do when we have voted four times and we are unable to come to a unanimous verdict?"

79 Ohio St.3d at 433, 683 N.E.2d at 1107.

must not be discouraged and continue your deliberations. Reread the instructions." The court held that the trial judge's response was proper, neutral, and noncoercive under the circumstances. Because a supplemental *Howard*[38] instruction was not appropriate, it found no ineffectiveness in counsel's failure to request it.

The Ohio Supreme Court's decision to overrule Dennis's claim of ineffective assistance of counsel was not based on an unreasonable application of federal law. The Ohio Supreme Court correctly cited and applied the United States Supreme Court's controlling decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■■■ A defendant making a claim of ineffective assistance of counsel has a two-part burden. The defendant must show (1) a violation of a substantial duty owed to the defendant, and (2) resulting prejudice. The Court in *Strickland* described this burden:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052.

The Court has also observed that the right to the effective assistance of counsel must be gauged against its purpose—to insure a fair proceeding:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Id.* at 692–93, 104 S.Ct. 2052.

As the Court has noted, "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 694–95, 104 S.Ct. 2052. The difficulties inherent in such an evaluation require a court to presume that counsel performed competently. *See id.* at 689, 104 S.Ct. 2052. Thus, to prevail, a party asserting that the conduct of an attorney was constitutionally defective must show that the representation fell below an objective standard of reasonable representation. *See id.* at 687–88, 104 S.Ct. 2052.

The range of objective reasonable representation is quite broad. For instance, in *Strickland*, the Court stated that where there is more than one possible defense strategy and counsel investigates and makes a choice, that choice is "virtually unchangeable." Id. at 690–691, 104 S.Ct. 2052.

Here, the Ohio Supreme Court addressed each of Dennis's subclaims and found that counsel acted with competence. Dennis has not shown that the court erred in so finding.

■■■ As only one example, Dennis now complains that his trial counsel failed to request a supplemental instruction pursuant to *State v. Howard* when the jury indicated some difficulty reaching a verdict

---

**38.** In *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), the Ohio Supreme Court set out a standard supplemental instruction to be given to deadlocked juries in the trial phase of a case.

in the penalty phase. 42 Ohio St.3d 18, 537 N.E.2d 188 (1989). But the *Howard* instruction strongly encourages jurors to reach a consensus.[39] Able trial counsel could decide it better not to have this language given to jurors hesitating to recommend death. Again, the communication from the jury was received only hours into deliberation on the penalty phase. In such circumstances, the failure to request the supplemental instruction does not reflect ineffective representation, but rather indicates sound trial strategy.

Even if Dennis had established that his counsel served ineffectively, he would still have to show resulting prejudice. To establish prejudice, the United States Supreme Court has stated that "under *Strickland,* a defendant must demonstrate that counsel's errors are so serious as to deprive him of a trial whose result is unfair or unreliable. Unfairness or unreliability does not result unless counsel's ineffectiveness deprives the defendant of a substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

The Ohio Supreme Court found that Dennis failed to show that any of his counsel's conduct resulted in prejudice. This Court likewise finds Dennis was not deprived of any substantive or procedural right to which the law entitles him.

In absence of objectively unreasonable representation and resulting prejudice, the Court overrules Dennis's tenth claim for relief.

### J. Twelfth Claim for Relief

With his twelfth claim for relief, Dennis argues that:

> Petitioner Dennis did not receive a fair sentencing proceeding thereby denying him his rights as guaranteed under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because the state failed to disclose all evidence relating to mitigating factors in his case.

As to this claim, Dennis argues that the prosecutor had a duty to disclose all information relating to mitigating factors when Dennis filed a motion for discovery.[40] Dennis says the prosecutor breached this duty by failing to disclose that Dennis's mother had informed the police of Dennis's participation in the Kyle killing for a $5,000 reward. Dennis claims that by reflecting a lack of parental support, this

---

**39.** In *State v. Howard,* the Ohio Supreme Court endorsed the following pattern instruction:

"The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientious-

ly do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."

42 Ohio St.3d at 25–26, 537 N.E.2d at 194–95.

**40.** Dennis made the request through a Motion to Compel Disclosure of Aggravating Factors and Information Relating to Mitigating Factors.

information represented mitigating evidence. The Court rejects Dennis's claim.

The Summit County Court of Appeals overruled this claim.[41] In so doing, the court first noted the lack of evidentiary support for the claim.[42] The court then found that even if evidence showed that Dennis's mother turned him in to the police, such evidence would not mitigate Dennis's culpability.

The decision of the court of appeals reflects a reasonable application of clearly established federal law. The court in effect properly applied the standard set forth in *Brady v. Maryland,* the United States Supreme Court case regarding a state's obligation to disclose information favorable to a defendant. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ The Court in *Brady* recognized that the state cannot withhold evidence favorable to the accused with respect to matters of either guilt or sentencing. *See id.* at 87, 83 S.Ct. 1194. To establish a *Brady* violation, the petitioner must prove that (1) the prosecution suppressed the evidence, (2) the evidence would have been favorable to the accused, and (3) the suppressed evidence was material. *See id.*

■ As noted, materiality is an essential element of a *Brady* violation. A prosecutor is "not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial...." *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 87

L.Ed.2d 481 (1985). "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose...." *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375; *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Agurs,* 427 U.S. at 104, 96 S.Ct. 2392 ("A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial"). In determining whether a petitioner has satisfied these requirements, the court must view the undisclosed evidence in relation to the record as a whole, as the materiality of exculpatory evidence will vary with the overall strength of the government's case.

■ Here, the court of appeals reasonably concluded that, even if presented, evidence showing Dennis's mother participated in his apprehension would not have affected the outcome of the trial. A jury learning that Dennis's mother had helped in his capture could quite logically find that his mother acted in accordance with her civic duty,[43] or perhaps find that Den-

---

**41.** Dennis presented this argument as Claim 19. The Ohio Supreme Court declined to review Dennis's petition for review of the Summit County Court of Appeals' decision denying postconviction relief.

**42.** The Court of Appeals indicated that the only record support for this claim was a statement by Lovelee Warren, the mother of Dennis's child. There is no showing that Warren is competent to testify under Federal Rule of Evidence 602, which provides: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter...."

**43.** This duty is statutorily imposes in some instances:

> (A) No person, knowing that a felony has been or is being committed, shall knowingly fail to report such information to law enforcement authorities.
> ***
> (G) Division (A) or (D) of this section does not require disclosure of information, when any of the following applies:
> (2) The information would tend to incriminate a member of the actor's immediate family.

OHREV.CODE § 2921.22 (emphasis added).

nis's mother believed Dennis was not subject to remediation. That Dennis's mother may not have believed her child deserves protection after committing murder does not demonstrate that Dennis suffered through a dysfunctional childhood.

The evidence in issue was not material, and thus its suppression did not result in a due process violation. The Court thus rejects Dennis's twelfth claim for relief.

### K. Eighteenth Claim for Relief

For his eighteenth claim, Dennis argues: Petitioner Dennis was denied his rights to due process of law, a fair hearing, and to be free from cruel and unusual punishment as guaranteed to him by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution because Ohio's reviewing courts have failed to fulfill their statutory obligation to fully review the proportionality of death sentences.

Under state law, Ohio courts conduct a proportionality review of any death sentence. OH REV.CODE § 2929.05. To help with this review, Ohio has established an information gathering system for capital cases. OH REV.CODE § 2929.021.

With this claim, Dennis argues that the trial courts in Ohio have repeatedly failed to file sentencing opinions in those cases in which a jury has returned a life verdict in capital cases. Dennis argues that as a result, the compilation of verdicts contains only death verdicts. The Court denies this claim as noncognizable on federal habeas review.

The Ohio Supreme Court rejected Dennis's claim.[44] The court then conducted its own proportionality review pursuant to Ohio law and found that, compared to other capital punishment cases, the death penalty in Dennis's case was proper and proportional.

■■■ Petitioner Dennis's eighteenth claim for relief fails to state a violation of federal law. Dennis argues that Ohio appellate courts failed to conduct a proper proportionality review, as required by

state law. This claim arises under state, rather than federal, law.

■■■ The United States Constitution does not require states to conduct a proportionality review. The Supreme Court has held that there was no constitutional requirement to conduct a proportionality review:

> There is thus no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it. *** We are not persuaded that the Eighth Amendment requires us to take that course.

*Pulley v. Harris,* 465 U.S. 37, 50–51, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

In conducting habeas review, a federal court is limited to deciding whether conviction violated the Constitution, law or treaties of the United States. *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley,* 465 U.S. at 41, 104 S.Ct. 871. Federal habeas relief is not available for review of questions of state law.

*See Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question"); *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270 (1926) (noting that the "due process clause in the Fourteenth Amendment does not ... enable this Court to revise the decisions of the state courts on questions of state law").

The Supreme Court has noted the limitations of federal habeas relief in the context of a petitioner's claim that he has been denied proportionality review by a state appellate court. Specifically, the Court has stated that such a claim, "even if

---

**44.** Dennis presented this claim to the Ohio Supreme Court as Proposition of Law No. 20.

accurate, would not warrant issuing a writ of habeas corpus. Rather it would appear to be a matter that the state courts should consider, if they are so inclined, free of the constraints of the federal writ." *Pulley,* 465 U.S. at 42, 104 S.Ct. 871.

Finding no claim involving federal law, the Court denies Dennis's eighteenth claim for relief.

### L. Nineteenth Claim for Relief

With his nineteenth claim for relief, Dennis argues:

> Petitioner Dennis was denied a fair sentencing proceeding and appellate review in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by virtue of the fact that the Ohio Supreme Court failed to consider a relevant mitigating factor presented to them.

With this argument, Dennis complains that the Ohio Supreme Court did not explicitly consider as a mitigating factor Juror Harris's failure to state that she had been the victim of a violent crime. Dennis argues that he was prejudiced by this failure to review this asserted mitigating factor. Because this claim arises solely under state law, the Court denies Dennis's nineteenth claim for relief.

As described above with regard to Dennis's eighteenth claim for relief, there is no constitutional requirement for appellate courts to conduct a proportionality review and examine mitigating factors. Without this constitutional requirement, Dennis's claim is noncognizable on federal habeas review. Thus, Petitioner's nineteenth claim for relief is denied.

### M. Twentieth Claim for Relief

For his twentieth claim, Dennis states: The statutory provisions governing the Ohio capital punishment scheme violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well the Supremacy clause of Article VI. of the United States Constitution. This scheme is unconstitutional on its face.

Dennis argues that the statutory provisions governing capital punishment in Ohio suffer from multiple constitutional inadequacies. Specifically, Dennis states that Ohio's death penalty scheme: (1) is unconstitutional in its trial proceedings; (2) is unconstitutional in its sentencing scheme; (3) is unconstitutional in its appellate proceedings; and (4) generally imposes cruel and unusual punishment. The Court finds no merit in Dennis's claim.

The Ohio Supreme Court summarily rejected Dennis's claim, noting that it had rejected such arguments on numerous occasions.[45] The court's rejection of Dennis's claim does not reflect an unreasonable application of clearly established federal law.

#### 1. Constitutionality of Ohio's Trial Proceedings

The Court first considers the constitutional defects Dennis claims plague Ohio's trial system. Dennis initially states that by giving prosecutors discretion in making indictment decisions, Ohio law provides for the arbitrary and discriminatory imposition of the death penalty.

Dennis's argument is unpersuasive. The United States Supreme Court has never found that prosecutorial discretion, in and of itself, diminishes the legitimacy of a capital punishment scheme. Indeed, as the Sixth Circuit has noted, discretion is inherent in the criminal justice system:

> It is well-settled that the procedural aspects of the administration of criminal justice abound with situations in which the exercise of discretion by a myriad of participants occupies a significant role in determining the destiny of an alleged offender.

*United States v. Talbot,* 825 F.2d 991, 999 (6th Cir.1987).

Dennis also argues that Ohio's trial system is flawed in that it requires proof of aggravating specifications during the guilt

---

**45.** Dennis presented this claim to the Ohio Supreme Court as Proposition of Law No. 21.

phase of a capital trial. Dennis claims that the failure to separate consideration of aggravating factors from the determination of guilt prevents an individualized determination of the appropriateness of imposing death.

Dennis's fails to offer any support for this argument. This lack of support is of no surprise, in that the United States Supreme Court has expressly held that a trier fact may sentence a defendant to death after finding an aggravating circumstance "at either the guilt or penalty phase." *Tuilaepa v. California*, 512 U.S. 967, 971–72, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

Next, Dennis argues that Ohio's trial system fails to adequately narrow the category of defendants eligible for the death penalty, because it "allows an aggravating circumstance merely to repeat an element of aggravated felony murder...." Dennis also claims that the felony murder aggravating circumstance is unconstitutionally vague.

Dennis's claim lacks merit. The United States Supreme Court has set forth the requirements of an aggravating circumstance:

> As we have explained, the aggravating circumstance must meet two requirements. First, the circumstance may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder. Second, the aggravating circumstance may not be unconstitutionally vague.

*Id.* at 972, 114 S.Ct. 2630 (citations omitted).

Here, the aggravating circumstance for felony murder does not apply to every defendant convicted of murder, but rather applies only to those defendants convicted of felony murder. That the aggravating circumstance also serves as an element of the substantive offense is of no constitutional significance. *See id.* ("The aggravating circumstance may be contained in the definition of the crime....").

Further, the aggravating circumstance for felony murder is not, contrary to Dennis's suggestion, unconstitutionally vague. Ohio Revised Code 2929.04(A)(7) provides the aggravating circumstance for felony murder:

> (A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:
>
> ***
>
> (7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnaping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

Dennis fails to provide any sound argument as to why the above provision is in any way ambiguous, yet alone unconstitutionally vague. The provision provides more than adequate guidance to the sentencer, and thus passes constitutional muster. *See Walton v. Arizona*, 497 U.S. 639, 654, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

Finally, Dennis claims that Ohio's trial system "places an impermissible risk of death on capital defendants who choose to exercise their right to a trial." Dennis notes that if a defendant pleads guilty or no contest to an indictment containing a death penalty specification, a trial judge has discretion to dismiss the death penalty specification "in the interest of justice." A trial judge does not possess such discretion, Dennis contends, when a defendant is tried and convicted by a jury.

Dennis's argument is unpersuasive. Ohio Rule of Criminal Procedure 11(C)(3) allows a trial judge to dismiss a death

specification when accepting a guilty or no contest plea if the interests of justice so require. This provision merely gives trial judges the same latitude they exercise when choosing to either accept or reject a jury's death sentence recommendation. Thus, Ohio's trial jury system imposes no burden on a defendant's right to a trial by jury.

### 2. Constitutionality of Ohio's Capital Sentencing Scheme

The Court now considers whether Ohio's capital sentencing procedures violate the Constitution. Dennis offers several arguments as to why Ohio's sentencing scheme is unconstitutional. However, as indicated below, Dennis fails to show that the Ohio Supreme Court's rejection of his arguments conflicts with clearly established federal law, as established by the United States Supreme Court. Having failed to do so, Dennis cannot prevail.

In his first argument, Dennis states that the "fatal flaw of mandatory death penalty statutes is that, without specific standards, the process of deciding who is to be sentenced to death is shielded from judicial mandatory review." Dennis fails to elaborate on this challenge, and, more important, fails to show how the Ohio Supreme Court's rejection of this argument conflicts with clearly established federal law. Accordingly, the Court finds no merit in Dennis's argument.

■ Dennis next asserts that Ohio's sentencing scheme unconstitutionally allows a defendant to receive the death penalty despite having had no deliberate intent to kill. However, the United States Constitution, as interpreted by the Supreme Court, does not require proof of intent to kill as a prerequisite to the imposition of capital punishment. *See Tison v. Arizona,* 481 U.S. 137, 157–58, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). The Court therefore rejects Dennis's argument.

Dennis also finds fault with Ohio's procedures regarding presentence reports. Under Ohio Revised Code 2929.03(D)(1), a defendant may choose to have a presentence report prepared. If requested, the report is automatically provided to the sentencing court. Dennis claims that this statute requires defendants to forfeit their ability to prevent prejudicial material from reaching the sentencing court. Yet, Dennis fails to offer any Supreme Court precedent to support his argument. Moreover, if a defendant fears the effect prejudicial material may have on the sentencing court, the defendant may simply choose not to request such a report.

■ Ohio' sentencing scheme is also unconstitutional, Dennis states, because it fails to require the State to prove (1) the absence of mitigating factors and (2) that death is the only appropriate penalty. This argument lacks merit. Dennis cites no Supreme Court authority suggesting that the State bears either burden.

Next, Dennis maintains that Ohio's flawed proportionality review also violates the United States Constitution. Once again, Dennis relies on no Supreme Court authority for this proposition. Indeed, the Court has not found that the Constitution requires any form of proportionality review, yet alone the type of review Dennis seeks. *See Pulley,* 465 U.S. at 50–51, 104 S.Ct. 871.

■ Dennis also complains that Ohio's sentencing scheme does not give a sentencing authority the option to choose a life sentence either (1) when only aggravating circumstances are presented, or (2) when the aggravating circumstances outweigh any mitigating circumstances. Dennis again fails to demonstrate that the Constitution, as interpreted by the United States Supreme Court, requires a state to provide either option.

According to Dennis, Ohio's requirement that a defendant prove mitigating factors by a preponderance of the evidence violates the Constitution. Lacking any support from Supreme Court precedent, this argument is unpersuasive.

Dennis next cites as a constitutional violation the fact that, under Ohio law, only an appellate court, rather than the original

sentencer, must conclude that death is the only appropriate sentence. Though now a familiar refrain, Dennis has again failed to show that Supreme Court precedent requires a different procedure.

■ Finally, Dennis cites Ohio's statutory provision regarding sanity evaluations as unconstitutional, in that it requires the accused to choose between presenting a defense in the guilt phase of proceedings or risking self-incrimination in the penalty phase. Ohio Revised Code Section 2945.39(D) allows statements made by the accused to be used against him in sentencing proceedings where the State seeks the death penalty. Dennis argues this violates the accused's rights against self-incrimination.

The United States Supreme Court has held that the Fifth Amendment's prohibition of compelled self-incrimination does not apply when the defendant makes his mental status part of his defense. *Buchanan v. Kentucky*, 483 U.S. 402, 424, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). Thus, rather than support Dennis's argument, as it must for purposes of habeas relief, Supreme Court precedent rejects Dennis's assertion.

### 3. Constitutionality of Ohio's Appellate Procedures

With respect to Ohio's death sentence appeals process, Dennis claims that Ohio's failure to accurately catalogue verdicts in capital cases prevents an accurate comparison of cases on appellate review. Meaningful appellate review, Dennis asserts, requires such a comparison.

The Court finds this argument unconvincing. As previously noted, the Constitution, as interpreted by the Supreme Court, does not require any form of proportionality review with respect to capital sentences. Thus, Dennis's argument that Ohio provides an insufficient proportionality review is of no moment in federal habeas review.

### 4. Cruel and Unusual Punishment

■ Dennis claims that the death penalty, as a general matter, constitutes cruel and unusual punishment. Dennis's argument essentially rests on two grounds: (1) societal interests are no longer served by the death penalty, thus its continued imposition is cruel and unusual; and (2) executions are inherently barbaric, particularly execution by electrocution.

The Court accepts neither ground of Dennis's claim. First, Ohio's legislature has determined that its citizens continue to benefit from the availability of capital punishment. The Court will not second-guess this determination. *See Penry v. Lynaugh*, 492 U.S. 302, 331, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (noting that legislative acceptance is "the clearest and most reliable objective evidence" of community values).

As for the barbarity of capital punishment, this Court necessarily defers to United States Supreme Court precedent. The Supreme Court has declared capital punishment constitutional, and thus found acceptable whatever barbarity that may inhere in such a punishment. *See Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality). Though what constitutes cruel and unusual punishment will inevitably change with society's "evolving standards of decency," the Supreme Court stands as the final arbiter as to when such a change might occur with respect to capital punishment. *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).

### VI. Conclusion

Upon reviewing the petition, the Court finds that Petitioner Dennis is not entitled to a writ of habeas corpus.

Having concluded a writ should not issue, the Court denies the following motions as moot: (1) Respondent Mitchell's motion to strike portions of Petitioner Dennis's Traverse [Doc. 43]; (2) Respondent Mitchell's motion for summary judgment [Doc. 49]; (3) Petitioner Dennis's motion for an order refusing Respondent Mitchell's application for judgment [Doc. 52]; (4) Petitioner Dennis's motion for an

order allowing additional discovery to oppose summary judgment [Doc. 52]; (5) Petitioner Dennis's motion to hold the Court's final decision in abeyance [Doc. 65]; and (6) Respondent Mitchell's motion requesting a final decision [Doc. 66].

Accordingly, this action is dismissed. However, because Petitioner Dennis arguably makes a showing of a constitutional violation with his first claim for relief, the Court finds a certificate of appealability is warranted. *See* 28 U.S.C. § 2253(c); FEDERAL RULE OF APPELLATE PROCEDURE 22(b). IT IS SO ORDERED.

### ORDER

The Court has entered its opinion and order in the above-captioned case. For the reasons therein, the Court finds that Petitioner Dennis is not entitled to a writ of habeas corpus.

Having concluded a writ should not issue, the Court denies the following motions as moot: (1) Respondent Mitchell's motion to strike portions of Petitioner Dennis's Traverse [Doc. 43]; (2) Respondent Mitchell's motion for summary judgment [Doc. 49]; (3) Petitioner Dennis's motion for an order refusing Respondent Mitchell's application for judgment [Doc. 52]; (4) Petitioner Dennis's motion for an order allowing additional discovery to oppose summary judgment [Doc. 52]; (5) Petitioner Dennis's motion to hold the Court's final decision in abeyance [Doc. 65]; and (6) Respondent Mitchell's motion requesting a final decision [Doc. 66].

Accordingly, this action is dismissed. However, because Petitioner Dennis arguably makes a showing of a constitutional violation with his first claim for relief, the Court finds a certificate of appealability is warranted. *See* 28 U.S.C. § 2253(c); FEDERAL RULE OF APPELLATE PROCEDURE 22(b). IT IS SO ORDERED.